ENGEL, APPELLEE, *v*. UNIVERSITY OF TOLEDO COLLEGE

OF MEDICINE, APPELLANT.

[Cite as *Engel v. Univ. of Toledo College of Medicine,*

130 Ohio St.3d 263, 2011-Ohio-3375.]

*Sovereign immunity—R.C. 9.86—Immunity of state employees—Physicians— Physician who was volunteer clinical faculty member for state medical college was not entitled to immunity as state employee—Physician had no contractual relationship with state, practiced medicine in private practice only, college exercised no control over physician's medical practice, and physician was not paid—R.C. 109.36—Physician was not serving in elected or appointed office or position with state.*

(No. 2009-1735—Submitted February 1, 2011—Decided July 13, 2011.)

APPEAL from the Court of Appeals for Franklin County, No. 09AP-53,

184 Ohio App.3d 669, 2009-Ohio-3957.

_____

**PFEIFER, J.**

{¶ 1}  Appellant, University of Toledo College of Medicine ("College of Medicine"), appeals the lower court's decision that Dr. Marek Skoskiewicz is entitled to personal immunity in the medical-malpractice suit filed against him because he is an officer or employee of the state. For the reasons that follow, we conclude that Dr. Skoskiewicz is not an officer or employee of the state.

### I.  Factual and Procedural Background

{¶ 2}  Dr. Marek Skoskiewicz practices general surgery at Henry County Hospital in Napoleon, Ohio. Henry County Hospital is a private organization and is not affiliated with the College of Medicine or any other state-sponsored

institution.  Dr. Skoskiewicz has been a volunteer clinical faculty member of the College of Medicine since 1995.  The University of Toledo is a state university. R.C. 3345.011.

{¶ 3}  In January 2005, while a third-year medical student from the College of Medicine was observing, Dr. Skoskiewicz performed two vasectomy surgeries on appellee, Larry Engel Jr., on separate days.  Both of these procedures occurred at Henry County Hospital.  Allegedly due to negligence during the first and second surgeries, a third surgery, to remove Engel's necrotic right testicle, was performed.

{¶ 4}  In May 2006, Engel filed a medical-malpractice suit against Dr. Skoskiewicz in the Henry County Court of Common Pleas.  Dr. Skoskiewicz asserted that he was entitled to personal immunity pursuant to R.C. 9.86 because, at the time of the surgeries, he was acting in his capacity as a volunteer clinical instructor of the College of Medicine and was therefore an officer or employee of the state.  Accordingly, Engel filed an action against the College of Medicine in the Court of Claims, which possesses exclusive jurisdiction over personal-immunity claims.  R.C. 2743.02(F).  In his complaint, Engel reasserted his malpractice allegations and sought a determination whether Dr. Skoskiewicz was entitled to personal immunity as a state employee.  The court of common pleas stayed Engel's malpractice suit pending resolution of the personal-immunity issue.

{¶ 5}  The Court of Claims concluded that Dr. Skoskiewicz had "performed the operations as a state employee" and that, therefore, he was entitled to personal immunity.  *Engel v. Univ. of Toledo College of Medicine,* Ct. of Cl. No. 2008-03572, 2008-Ohio-7058, ¶ 23. The Tenth District Court of Appeals affirmed, based on its conclusion that Dr. Skoskiewicz "satisfies the definition of 'officer or employee' in R.C. 109.36(A)(1)(a)." *Engel v. Univ. of Toledo College*

*of Medicine,* 184 Ohio App.3d 669, 2009-Ohio-3957, 922 N.E.2d 244, ¶ 16. This court accepted Engel's discretionary appeal. 124 Ohio St.3d 1479, 2010-Ohio-354, 921 N.E.2d 249.

## II. Analysis

{¶ 6} R.C. 9.86 states, "Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." In *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, 857 N.E.2d 573, ¶ 14, this court stated that determining whether a person is entitled to R.C. 9.86 immunity requires a two-part analysis, the first part of which is to determine whether the person claiming immunity is a state officer or employee. If the person claiming immunity is a state officer or employee, the second part of the analysis is to determine whether that person was acting within the scope of employment when the cause of action arose. Id. Because we conclude that Dr. Skoskiewicz was not a state officer or employee when the cause of action arose, we need not address the second part.

### *A. Is Dr. Skoskiewicz a state employee?*

{¶ 7} R.C. 109.36(A)(1)(a) through (d) defines who is a state officer or employee for purposes of R.C. 9.86. R.C. 9.85(A); *Theobald* at ¶ 14. Only subsection (a) is relevant here; it provides that a state officer or employee is "[a] person who, at the time a cause of action against the person arises, is serving in an elected or appointed office or position with the state or is employed by the state."

**{¶ 8}** This court has rarely had the opportunity to examine subsection (a) of R.C. 109.36. In *State ex rel. Sanquily v. Lucas Cty. Court of Common Pleas* (1991), 60 Ohio St.3d 78, 573 N.E.2d 606, we did little more than acknowledge the obvious: that a doctor employed as a resident physician working for the Medical College of Ohio, a state institution, was a state employee. We did not use a specific test or look at a list of criteria to determine whether the doctor in that case was a state officer or employee, as it was obvious that he was a state employee.

**{¶ 9}** Although *Theobald* involved a similar medical-malpractice suit filed against several doctors, the case is of little help here. The issue whether the doctors were state employees was not before the court because it had not been appealed. Id. at ¶ 14. The ultimate issue in *Theobald* was whether the doctors were acting within the scope of employment when the alleged negligence occurred, which is not relevant here. Id.

**{¶ 10}** The College of Medicine suggests that certain factors be considered when determining whether a person is a state employee. Although we do not adopt a formal test, we find the proposed factors to be helpful. We emphasize that other factors may be considered and stress that in most circumstances a person's status as a state employee is factually indisputable.

1. Contractual relationship between state and alleged employee

**{¶ 11}** The College of Medicine argues that Dr. Skoskiewicz was not a state employee because he did not have a contractual relationship with the College of Medicine. The only possible evidence that such a contractual relationship did exist are two letters from the College of Medicine, one from 1995 and one from 2005, confirming Dr. Skoskiewicz's status as a volunteer clinical instructor. But the letters do not show that Dr. Skoskiewicz was hired, appointed, or credentialed

4

by the College of Medicine. Indeed, the parties stipulated that Dr. Skoskiewicz practiced general surgery at Henry County Hospital, which is not affiliated with or a part of any state university and is not an instrumentality of the state of Ohio. We conclude that there was no contract of employment, written or oral, between the College of Medicine and Dr. Skoskiewicz.

2. State control over actions of purported employee

{¶ 12} The College of Medicine argues that Dr. Skoskiewicz was not a state employee because the College of Medicine did not exercise control over Dr. Skoskiewicz's medical practice. This argument is based on "the logical principle that where the state lacks the ability to control a physician's actions it makes no sense to extend immunity to him." See *Walton v. State Dept. of Health*, 162 Ohio App.3d 65, 2005-Ohio-3375, 832 N.E.2d 790, ¶ 19 (citing state's lack of control over plaintiff as basis for holding that plaintiff was not state employee). At all times relevant to this case, Dr. Skoskiewicz was treating a private patient at a private hospital.

{¶ 13} For its holding that Dr. Skoskiewicz was serving in an appointed position with the state, the court of appeals relied on the 2005 letter from the College of Medicine to Dr. Skoskiewicz confirming his "appointment" to the volunteer faculty. That letter states, "As a condition of appointment, you will be subject to the [Medical College of Ohio] Faculty Rules and Regulations, and Medical College of Ohio policies and procedures, including those governing research. Use of your Medical College of Ohio title or academic affiliation on professional publications, such as professional journal articles, requires the prior approval and is at the discretion of the department chair." But this language, without more, does not demonstrate that the College of Medicine exercised, or intended to exercise, such control over Dr. Skoskiewicz's practice of medicine as

to justify a holding that the doctor was at any time a state employee. Whether the rules, regulations, policies, and procedures cited in the first sentence above would control the way Dr. Skoskiewicz practiced medicine is a matter of pure speculation. The import of the second sentence seems to be to ensure that the College of Medicine's name is not used to lend gravitas to published materials without its prior approval, which hardly shows the kind of control that would support a holding of employment. We conclude that the College of Medicine did not control Dr. Skoskiewicz.

### 3. Payment by state for services of alleged employee

**{¶ 14}** Finally, the College of Medicine argues that Dr. Skoskiewicz was not a state employee because he was not paid by the state for his services. The parties stipulated that "[a]t no time relevant to this case was Dr. Skoskiewicz a member of the regular faculty of the [College of Medicine]. At all times relevant to this case, regular faculty members of the [College of Medicine] were paid academic salaries directly from [the college]. Dr. Skoskiewicz did not receive any such salary."

**{¶ 15}** That the College of Medicine did not directly pay Dr. Skoskiewicz does not necessarily mean that he is not a state employee. For example, in *Potavin v. Univ. Med. Ctr.* (Apr. 19, 2001), 10th Dist. No. 00AP-715, 2001 WL 392492, the court of appeals concluded that a state entity, the University of Cincinnati Medical Center, and a private entity, the Foundation for Obstetrics and Gynecology, "functioned as one entity" because the foundation "could not exist if not for its relationship" with the medical center. Id. at *5. Based on that finding, the court concluded that a doctor who volunteered for the state entity but who was paid by the foundation was a state employee. Id. But here no such symbiotic

6

relationship exists. The College of Medicine did not pay Dr. Skoskiewicz, and the Henry County Hospital, which is not connected with the college, did.

{¶ 16} Based on the record before us, we conclude that there was no contract of employment between the College of Medicine and Dr. Skoskiewicz, that the College of Medicine did not exercise control over Dr. Skoskiewicz's medical practice, and that the College of Medicine did not pay Dr. Skoskiewicz. Based on these conclusions, we conclude that Dr. Skoskiewicz was not an employee of the College of Medicine.

### B. Does Dr. Skoskiewicz hold a state office or position?

{¶ 17} We must also determine whether Dr. Skoskiewicz was "serving in an elected or appointed office or position with the state" within the meaning of R.C. 109.36(A)(1)(a). Based on the record and briefs, there is no suggestion that Dr. Skoskiewicz was holding an elected office or position, so we need not address that issue, which leaves us to consider only whether Dr. Skoskiewicz holds an "appointed office or position with the state."

{¶ 18} To be sure, the letters that Dr. Skoskiewicz received from the College of Medicine stated that the College of Medicine had approved his "appointment" to the volunteer faculty at the rank of clinical assistant professor. As support for the proposition that Dr. Skoskiewicz had been appointed to an R.C. 109.36 "office or position," however, these letters are a slender reed. We refuse to read so much into the letters' use of the word "appointment" because, to us, the more significant words in R.C. 109.36(A)(1)(a) are "office or position with the state."

{¶ 19} Dr. Skoskiewicz does not occupy a position or office with the state. In *State ex rel. Newman v. Skinner* (1934), 128 Ohio St. 325, 191 N.E. 127, this court was required to determine whether a person employed by the state as a

librarian was also a state officer. We stated that "[a] public officer, as distinguished from an employee, must possess some sovereign functions of government to be exercised by him for the benefit of the public either of an executive, legislative, or judicial character. * * * '[T]he chief and most decisive characteristic of a public office is determined by the quality of the duties with which the appointee is invested, and by the fact that such duties are conferred upon the appointee by law.' " Id. at 327, quoting *State ex rel. Landis v. Butler Cty. Bd. of Commrs.* (1917), 95 Ohio St. 157, 159, 115 N.E. 919. Clearly, Dr. Skoskiewicz possessed no "sovereign" function of an executive, legislative, or judicial character. And his duties were not of a level consonant with those of a public office. The appointment did not entitle Dr. Skoskiewicz to office space, staff, or authority at the College of Medicine; did not enable him to lecture or teach a class at the College of Medicine; did not allow him to conduct university-sponsored research, although he was allowed to collaborate with College of Medicine researchers; did not allow him to practice at the university clinic; and did not entitle him to payment from the College of Medicine. In truth, based on the record before us, the appointment did not enable Dr. Skoskiewicz to do anything except, as stipulated, allow students to "rotate through Dr. Skoskiewicz's practice as a part of one-month clerkships." Furthermore, the appointment did not impose any duties upon Dr. Skoskiewicz. To the extent that complying with the College of Medicine's policy guidelines is a duty, the duty was not conferred by law.

{¶ 20} Dr. Skoskiewicz and the many other volunteer clinical faculty in Ohio provide an important service. But that service, however commendable, does not transform the volunteers behind it into an arm of the state. Based on the

record before us, we conclude that Dr. Skoskiewicz did not hold an appointed office or position with the state.

### III. Conclusion

**{¶ 21}** We conclude that Dr. Skoskiewicz is not a state employee and that he does not hold an appointed office or position with the state. Accordingly, he is not entitled to personal immunity pursuant to R.C. 9.86. We reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Law Office of John B. Fisher, L.L.C., and John B. Fisher, for appellee.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, Brandon J. Lester, Deputy Solicitor, and Anne Berry Strait, Assistant Attorney General, for appellant.

Kitch, Drutchas, Wagner, Valitutti & Sherbrook, Susan Healy Zitterman, and John S. Wasung, urging affirmance for amicus curiae Dr. Marek Skoskiewicz.

Giorgianni Law, L.L.C., and Paul Giorgianni; Amer Cunningham Co., L.P.A., and Thomas R. Houlihan; and Elk & Elk Co., Ltd., and Peter D. Traska, urging reversal for amicus curiae Ohio Association for Justice.

_____