[Cite as *Phillips v. Ohio State Univ. Med. Ctr.*, 2012-Ohio-3893.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

CARLA PHILLIPS

    Plaintiff

    v.

THE OHIO STATE UNIVERSITY MEDICAL CENTER

    Defendant

Case No. 2009-07971

Judge Clark B. Weaver Sr.

<u>DECISION</u>

{¶ 1} An evidentiary hearing was conducted in this matter to determine whether Carol Greco, M.D., is entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86. At the close of proceedings, the court held the record open for the filing of the depositions of Andrew Thomas, M.D., and Mark Landon, M.D., which were filed on February 6, 2012.[1] The depositions shall be marked as Joint Exhibits 1 and 2, respectively, and they are ADMITTED.

{¶ 2} This case arises out of the medical treatment rendered to plaintiff, Carla Phillips, on February 23, 2009, at The Ohio State University Medical Center in Columbus, Ohio. In 2007, plaintiff visited Dr. Greco's medical office located on Lane Avenue. In 2009, plaintiff decided to undergo a myomectomy, a surgery to remove fibroid tumors of the uterus. Inasmuch as plaintiff's tumors were located within the muscle of her uterus, an open incision or laparotomy was performed. Dr. Greco estimated that she removed 30 fibroid tumors during the surgery, which lasted longer

---

[1]Although the court thoroughly reviewed the deposition of Andrew Thomas, M.D., the court finds that his testimony was not germane to the issue of whether Dr. Greco was an officer or employee of the state as defined in R.C. 109.36.

than four hours.  Subsequent to the procedure, it was discovered that a surgical sponge had been left inside plaintiff's body.  Plaintiff underwent a second surgery to remove the sponge.

{¶ 3} R.C. 2743.02(F) states, in part:

{¶ 4} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶ 5} R.C. 9.86 states, in part:

{¶ 6} "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 7} "[I]n an action to determine whether a physician or other health-care practitioner is entitled to personal immunity from liability pursuant to R.C. 9.86 and 2743.02(A)(2), the Court of Claims must initially determine whether the practitioner is a state employee.  If there is no express contract of employment, the court may require other evidence to substantiate an employment relationship, such as financial and corporate documents, W-2 forms, invoices, and other billing practices. If the court determines that the practitioner is not a state employee, the analysis is completed and R.C. 9.86 does not apply." *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, ¶30.

{¶ 8} "For purposes of R.C. 9.86 and 2743.02(F) 'officer or employee' must be defined in accordance with R.C. 109.36(A)." *State ex rel. Sanquily v. Court of Common Pleas*, 60 Ohio St. 3d 78, (1991).[2]

---

[2]R.C. 109.36(A)(1) states:
"As used in this section and sections 109.36 to 109.366 of the Revised Code: (A)(1) 'Officer or employee' means any of the following:

{¶ 9} On September 16, 2010, the parties entered into a stipulation that any fees generated by Dr. Greco or her practice for the care and treatment of plaintiff were not billed or collected by The Ohio State University (OSU), and that Dr. Greco received no salary from OSU for her clinical care of plaintiff.  The parties requested that proceedings in this case be stayed pending a decision by the Supreme Court of Ohio in a related case.  On July 13, 2011, the Supreme Court issued its decision in *Engel v. Univ. of Toledo College of Med.*, 130 Ohio St.3d 263, 2011-Ohio-3375.

{¶ 10} In *Engel, supra*, the Supreme Court of Ohio found that a volunteer clinical faculty member of the University of Toledo College of Medicine, who performed surgery on a patient at a private hospital while a third-year medical student from the College of Medicine was observing, was not an officer or employee of the state.  Although the Supreme Court declined to adopt a formal test, it found the following factors to be relevant in determining whether a physician is an officer or employee of the state: 1) contractual relationship between the state and the alleged employee; 2) state control over actions of the purported employee; and 3) payment by the state for services of the alleged employee.  *Id.*, ¶10-16.  The court further found that it must be determined whether the physician was "serving in an elected or appointed position with the state" within the meaning of R.C. 109.36(A)(1)(a).  *Id.,* ¶17.

{¶ 11} Dr. Greco testified that she is a board certified obstetrician gynecologist (OB/GYN) and that she is employed by the Kingsdale Gynecologic Division of MaternOhio Clinical Associates.  Since 1991, Dr. Greco has held a clinical appointment with defendant's college of medicine whereby she teaches residents clinical gynecology, including surgery.   Dr. Greco stated that she receives no financial compensation as a result of her appointment but that she has privileges to perform

"(a) A person who, at the time a cause of action against the person arises, is serving in an elected or appointed office or position with the state or is employed by the state.

"(b) A person that, at the time a cause of action against the person, partnership, or corporation arises, is rendering medical, nursing, dental, podiatric, optometric, physical therapeutic, psychiatric, or psychological services pursuant to a personal services contract or purchased service contract with a department, agency, or institution of the state.

"(c) A person that, at the time a cause of action against the person, partnership, or corporation arises, is rendering peer review, utilization review, or drug utilization review services in relation to medical, nursing, dental, podiatric, optometric, physical therapeutic, psychiatric, or psychological services pursuant to a personal services contract or purchased service contract with a department, agency, or institution of the state.

"(d) A person who, at the time a cause of action against the person arises, is rendering medical, nursing, dental, podiatric, optometric, physical therapeutic, psychiatric, or psychological services to

surgery at defendant's hospital. Dr. Greco explained that if she scheduled a surgery for one of her patients at defendant's hospital, she is expected to allow residents to observe the surgery as part of their clinical education. According to Dr. Greco, the service she provides is teaching residents, and the benefit she receives is that residents provide treatment and care to her patients who are admitted to defendant's hospital. Dr. Greco added that defendant provides her with parking privileges at the hospital. Dr. Greco stated that the payment that she received as a result of the care that she rendered to plaintiff came from plaintiff's insurance carrier.

{¶ 12} Daniel Pierce, administrator for the department of OB/GYN at OSU, testified that in 2009, Dr. Greco held the status of clinical instructor, an unpaid position in the auxiliary faculty; that as such, Dr. Greco did not have the responsibility to treat patients in either the clinic or the labor and delivery unit; that Dr. Greco did not have any obligation to deliver a certain number of babies at defendant's hospital during the year; that defendant did not collect any portion of Dr. Greco's fees for her professional services; and that defendant did not issue Dr. Greco a W-2 form in 2009. In addition, Pierce testified that Dr. Greco did not practice medicine through the university's practice plan, OSUP, and that defendant did not provide any malpractice insurance coverage for Dr. Greco. Pierce noted that for full-time faculty, defendant performs an annual review and in-depth evaluation by the department chair. However, for auxiliary faculty, defendant performs a "cursory" annual review solely to renew their appointment. Pierce stated that Dr. Greco was encouraged but not required to allow residents to participate in the care of her patients while they were admitted to defendant's hospital.

{¶ 13} Robert Bornstein, M.D., testified that he is both vice dean for academic affairs at defendant's college of medicine, and a professor of psychiatry, neurology, and psychology. Dr. Bornstein described auxiliary faculty as unpaid individuals who are given a title because of their voluntary activities. Dr. Bornstein stated that most auxiliary faculty are private practitioners who want to be able to treat their patients at defendant's hospital. Dr. Bornstein stated that in order to practice medicine at defendant's hospital, one must have a faculty appointment.

{¶ 14} According to Dr. Bornstein, members of the auxiliary faculty are not considered employees of the university. Dr. Bornstein added that the college of

patients in a state institution operated by the department of mental health pursuant to an agreement with

medicine does not have any control over auxiliary faculty's medical practice, in that the college does not bill for their professional services. Dr. Bornstein did state that auxiliary faculty are expected to supervise residents if a resident is involved in the treatment or care of an auxiliary faculty's patient.

{¶ 15} Mark Landon, M.D., testified that he is the chairman of the OB/GYN department at defendant's college of medicine. Dr. Landon testified that the full-time faculty's primary responsibility is teaching and education of medical students and residents, as well as conducting clinical or basic science research. Dr. Landon noted that all full-time faculty in the OB/GYN department are obligated to participate in various education functions, including assigned supervision of residents for patients who do not have a private physician, and being "on-call" at night. In contrast, voluntary or auxiliary faculty are not assigned to supervise residents, and they do not participate in scheduled didactic teaching responsibilities. Dr. Landon described voluntary faculty as physicians engaged in the private practice of medicine, and noted that in virtually all of those practices they primarily care for patients who have third-party medical insurance. Dr. Landon stated that he has no control over the patients that auxiliary faculty see and that he does not have the power to assign patients to auxiliary faculty members. Dr. Landon noted that auxiliary faculty do not evaluate residents in terms of a formal or written evaluation. Dr. Landon also stated that Dr. Greco was not considered an employee of OSU; that the department of OB/GYN does not keep a personnel file on auxiliary faculty; and that in 2009, less than one percent of OB/GYN residents' operating room training was provided by Dr. Greco or her colleagues.

{¶ 16} Upon review of the evidence, the court finds that Dr. Greco did not have an employment contract with defendant; that she was a volunteer/auxiliary physician with defendant to acquire hospital privileges. The court further finds that defendant did not control the care and treatment that Dr. Greco rendered to plaintiff: plaintiff was a patient of Dr. Greco's private medical practice who elected to have surgery performed by Dr. Greco. Lastly, the court finds that Dr. Greco received no compensation from defendant as a result of performing surgery on plaintiff at defendant's hospital.

{¶ 17} With regard to whether Dr. Greco was serving in an elected or appointed office or position with the state pursuant to R.C. 109.36(A)(1)(a), nothing in the record

the department."

shows that Dr. Greco was holding an elected office or position.[3] Moreover, no evidence in the record shows that Dr. Greco "possessed any sovereign functions of government to be exercised by [her] for the benefit of the public either of an executive, legislative, or judicial character." *See Engel, supra*, quoting *State ex rel. Newman v. Skinner*, 128 Ohio St. 325, 327 (1934). Inasmuch as defendant's hospital is a teaching hospital, it is inevitable that residents will be involved in any care that takes place at that facility. However, the court finds that Dr. Greco was not an officer or employee of the state of Ohio as defined in R.C. 109.36. Therefore, based upon the totality of the evidence, the court concludes that Carol Greco, M.D., is not entitled to immunity pursuant to R.C. 9.86 and 2743.02(F), and that the courts of common pleas have jurisdiction over any civil actions that may be filed against her based upon the allegations in this case.

---

[3]Inasmuch as Dr. Greco did not have an employment contract with defendant, the court finds that R.C. 109.36(A)(1)(b)-(d) do not apply.



# Court of Claims of Ohio

CARLA PHILLIPS

    Plaintiff

    v.

THE OHIO STATE UNIVERSITY MEDICAL CENTER

    Defendant

Case No. 2009-07971

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

{¶ 18} The court held an evidentiary hearing to determine civil immunity pursuant to R.C. 9.86 and 2743.02(F). Upon hearing all the evidence and for the reasons set forth in the decision filed concurrently herewith, the court finds that Carol Greco, M.D. is not entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas have jurisdiction over any civil actions that may be filed against her based upon the allegations in this case.

_____
CLARK B. WEAVER SR.
Judge

cc:

Brian M. Kneafsey Jr.
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

David I. Shroyer
536 South High Street
Columbus, Ohio 43215

002
Filed April 10, 2012
To S.C. reporter August 24, 2012