[Cite as *Keegan v. Univ. of Toledo College of Medicine*, 2013-Ohio-3641.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MICHAEL J. KEEGAN, Exec.

     Plaintiff

     v.

THE UNIVERSITY OF TOLEDO COLLEGE OF MEDICINE

     Defendant

Case No. 2012-04413

Magistrate Robert Van Schoyck

DECISION OF THE MAGISTRATE

{¶ 1} This matter came before the court for an evidentiary hearing to determine whether Daniel J. Kosinski, M.D. is entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86.   As an initial matter, the court hereby makes the following rulings as to the evidentiary objections set forth in the deposition transcript of Jeffrey P. Gold, M.D., which was admitted into evidence in lieu of live testimony as Defendant's Exhibit J: the objections on pages 25, 27, 28, 31, 34, and 39 are OVERRULED; the objections on pages 22 and 30 are SUSTAINED.

{¶ 2} Plaintiff brings this action for wrongful death.  The case arises, in part, from medical treatment that Dr. Kosinski rendered to plaintiff's decedent in June 2010.  There is no dispute that Dr. Kosinski was an employee of defendant during the relevant time period.  Plaintiff alleges, though, that the actions of Dr. Kosinski which are at issue in this case were performed manifestly outside the scope of his employment or official responsibilities as a state employee such that he may be personally liable in a civil action.  Defendant and Dr. Kosinski assert that his actions were performed in the course of his state employment and that he is therefore immune from personal liability.

{¶ 3} Dr. Kosinski, who is board-certified in cardiology and nuclear medicine, was at all times relevant employed by defendant in the full-time position of Associate Professor of Medicine in the Division of Cardiology. According to his faculty appointment agreement, Dr. Kosinski was bound by the University of Toledo "Bylaws, Faculty Rules and Regulations, and policies and procedures of the University * * *." (Defendant's Exhibit B.) The Faculty Rules and Regulations provide, in part, that all faculty members shall perform "[a]ll duties established by their respective college, department and/or division" and that full-time faculty members are to "devote one hundred (100%) percent of their professional time and effort to official programs and approved activities of The University of Toledo * * *." (Defendant's Exhibit C, pp. 3, 4.)

{¶ 4} Dr. Kosinski testified that the duties established for him by the College of Medicine and Division of Cardiology included providing both clinical and didactic training to medical residents and fellows, and also providing clinical care to patients. Dr. Kosinski stated that because of the multi-faceted nature of the medical training programs, on occasion there were no residents or fellows rotating through for training in his particular medical specialty, and he related that he is not aware of any evidence that would show he was engaged in such training during the times relevant to this case. Dr. Kosinski further stated, however, that he was responsible for rendering clinical care to patients in clinics operated by defendant regardless of whether or not he was training a resident or fellow.

{¶ 5} Dr. Kosinski testified that his primary work location was the University of Toledo Medical Center, where the Division of Cardiology maintained its offices and main clinic, but that he was directed at times to work at one of the smaller cardiology clinics that defendant operated at satellite locations in the communities of Bellevue, Perrysburg, and Wauseon, Ohio. Dr. Kosinski explained that the satellite clinics were generally staffed each weekday by one faculty physician, on a rotating schedule, along with any fellows or residents. The medical treatment at issue in this case occurred at

the satellite clinic in Bellevue Hospital, which operated pursuant to a "Clinical Education Agreement" between the University of Toledo and Bellevue Hospital. (Defendant's Exhibit E.)

{¶ 6} Dr. Kosinski stated that the Chief of the Division of Cardiology, Dr. Chris Cooper, prepared a schedule every month to assign the work locations for each of the division's faculty physicians. According to plaintiff's complaint, the decedent underwent a stress test at the Bellevue Hospital satellite clinic on June 3, 2010, and Dr. Kosinski authenticated the test on June 10, 2010. The Division of Cardiology schedule for June 2010 shows that Dr. Kosinski had been directed to work at the Bellevue Hospital satellite clinic on those dates. (Defendant's Exhibit I.) Dr. Kosinski testified that the satellite clinic had the words "University of Toledo" printed above the door, that he always wore a lab coat bearing those words, and that he was required by defendant to always wear a University of Toledo identification badge regardless of his work location. He acknowledged, though, that Bellevue Hospital scheduled patients for the clinic, kept patient charts, provided consent forms and other documents, and furnished the equipment in the clinic.

{¶ 7} Dr. Kosinski testified that he was paid a fixed amount of compensation (e.g., not tied to the volume of patients he treated), and that this amount was set by defendant's administration but was paid to him by both the University of Toledo and University of Toledo Physicians, L.L.C. (UTP), which he understood to be a practice plan that performs billing and other administrative functions associated with patient care. Dr. Kosinski stated that he does not know why his compensation was paid in this manner and that he had no involvement in the billing or other business aspects of patient care, but he related that he was required to maintain employment with UTP as a condition of his faculty appointment.

{¶ 8} Jeffrey P. Gold, M.D. serves as the Chancellor and Executive Vice President of Health Affairs for the University of Toledo, Executive Dean of the College of Medicine for the University of Toledo, and Chairman of the University of Toledo Clinical

Faculty, Inc. (UTCF).  Dr. Gold testified that UTP is a subsidiary of UTCF and that these nonprofit corporations serve as the official practice plan that administers billing, collections, credentialing, compliance, contract management, and other business services for the faculty physicians who render clinical care.  Dr. Gold stated that while the compensation models vary, the full-time faculty physicians who render clinical care are generally paid by both the University of Toledo and the practice plan and are required to maintain a contractual relationship with the practice plan.

{¶ 9} Dr. Gold explained that defendant, in accordance with the Faculty Rules and Regulations, requires that all professional activities performed by its full-time faculty physicians, including clinical care, be performed on behalf of the University of Toledo. Dr. Gold described defendant as having a four-prong mission consisting of education, scholarship and research, clinical care, and community outreach, and he explained that faculty members are assigned duties within those areas, with some faculty focusing on certain areas more than others.  According to Dr. Gold, Dr. Kosinski's duties included education and clinical care, which he explained to be interrelated in that, in order to provide medical education, defendant must have functioning clinics and practicing clinicians.  Dr. Gold also explained that Dr. Kosinski's responsibilities relative to the satellite clinics benefitted defendant's community outreach efforts.

{¶ 10} R.C. 9.86 states, in part:

{¶ 11} "Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 12} R.C. 2743.02(F) states, in part:

{¶ 13} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action. The officer or employee may participate in the immunity determination proceeding before the court of claims to determine whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code."

{¶ 14} "[I]n an action to determine whether a physician or other health-care practitioner is entitled to personal immunity from liability pursuant to R.C. 9.86 and 2743.02(A)(2), the Court of Claims must initially determine whether the practitioner is a state employee. * * * If the court determines that the practitioner is a state employee, the court must next determine whether the practitioner was acting on behalf of the state when the patient was alleged to have been injured. If not, then the practitioner was acting 'manifestly outside the scope of employment' for purposes of R.C. 9.86." *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, ¶ 30-31; *see also Engel v. Univ. of Toledo College of Med.*, 130 Ohio St.3d 263, 2011-Ohio-3375, ¶ 6. "[T]he question of scope of employment must turn on what the practitioner's duties are as a state employee and whether the practitioner was engaged in those duties at the time of an injury." *Theobald* at ¶ 23. "If there is evidence that the practitioner's duties include the education of students and residents, the court must determine whether the practitioner was in fact educating a student or resident when the alleged negligence occurred." *Id.* at ¶ 31.

{¶ 15} Upon review, the court finds that the duties and responsibilities of Dr. Kosinski's employment with defendant included both the education of medical residents

and fellows, and the rendering of patient care at cardiology clinics operated by defendant. The court finds that although the evidence does not show that Dr. Kosinski was educating a resident or fellow when the alleged negligence occurred, the evidence does show that he was engaged in his clinical care duties at the time. The court further finds that Dr. Kosinski received payment from and was employed or otherwise associated with UTP, but that such facts do not remove his responsibilities to defendant. *See Ries v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 11AP-1004, 2012-Ohio-1766, ¶ 12-13; *see also Allgood v. Ohio State Univ. Med. Ctr.*, Ct. of Cl. No. 2010-04394, 2011-Ohio-1428; *Schoewe v. Univ. of Toledo*, Ct. of Cl. No. 2009-07369 (Oct. 24, 2011).

{¶ 16} Based on the foregoing, the court finds that Dr. Kosinski was acting within the scope of his state employment at all times pertinent hereto. Consequently, it is therefore recommended that the court issue a determination that Dr. Kosinski is entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against him based upon the allegations in this case.

{¶ 17} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ROBERT VAN SCHOYCK
Magistrate

cc:

Anne B. Strait
Ashley L. Oliker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Charles M. Murray
Michael J. Stewart
111 East Shoreline Drive
Sandusky, Ohio 44870

001
Filed April 24, 2013
To S.C. Reporter August 22, 2013