[Cite as *Kuhbanani v. Ohio State Univ. Med. Ctr.*, 2013-Ohio-4855.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

NEWSHA KUHBANANI, et al.

       Plaintiffs

       v.

THE OHIO STATE UNIVERSITY MEDICAL CENTER, et al.

       Defendants

Case No. 2011-08547

Magistrate Anderson M. Renick

## DECISION OF THE MAGISTRATE

{¶ 1} An evidentiary hearing was conducted in this matter to determine whether Sarah Artman, M.D., is entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86.[1] Dr. Artman is an obstetrician who delivered plaintiff Sooshyance Gharibshahi on May 15, 2008, at the Ohio State University Medical Center (OSUMC) after admitting her mother, plaintiff Newsha Kuhbanani, as an inpatient to the labor and delivery department. R.C. 2743.02(F) states, in part:

{¶ 2} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶ 3} R.C. 9.86 states, in part:

{¶ 4} "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 5} "[I]n an action to determine whether a physician or other health-care practitioner is entitled to personal immunity from liability pursuant to R.C. 9.86 and 2743.02(A)(2), the Court of Claims must initially determine whether the practitioner is a state employee. If there is no express contract of employment, the court may require other evidence to substantiate an employment relationship, such as financial and corporate documents, W-2 forms, invoices, and other billing practices. If the court determines that the practitioner is not a state employee, the analysis is completed and R.C. 9.86 does not apply." *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, ¶ 30.

{¶ 6} Dr. Artman argues that she was a state "officer or employee" pursuant to the statutory definition set forth in R.C. 109.36(A)(1), and consequently, that she is entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F).

{¶ 7} Dr. Artman testified that at the time of the Kuhbanani birth, she was an employee of Artman and Turner M.D.s, Inc., a private obstetrician gynecologist (OB/GYN) practice group, of which Drs. Artman and Turner were the sole shareholders. Dr. Artman also held a clinical appointment as an unpaid auxiliary faculty member with the title of Clinical Assistant Professor, which obligated her to teach residents during her clinical practice, including performing patient examinations and labor and delivery. Although Dr. Artman estimated that teaching residents doubled the amount of time required to complete her clinical rounds, she benefitted by having residents monitor her patients while she was away from the hospital.

---

[1]Defendants' May 21, 2013 motion for leave to file a reply brief is GRANTED.

{¶ 8} Defendants presented two witnesses by way of deposition. Robert Bornstein, Ph.D., Vice Dean for Academic Affairs for The Ohio State University (OSU) College of Medicine, is responsible for appointment, promotions, and recruitment of faculty members. Dr. Bornstein testified that full-time faculty members are paid employees and that OSU controls "everything about their practice," including where, when, and in what areas they practice. Dr. Bornstein explained that, in contrast to the duties of regular faculty, unpaid auxiliary faculty members are not obligated to participate in didactic teaching, contribute to medical literature, or participate on hospital committees. Dr. Bornstein testified that all services provided by full-time faculty are billed through a university entity, OSU Physicians, Inc., whereas unpaid auxiliary faculty members are responsible to bill for their own services.

{¶ 9} Philip Samuels, M.D., the director of the OSUMC OB/GYN residency program, testified that he is familiar with the obligations of both full-time staff members and unpaid auxiliary staff. Dr. Samuels testified that full-time medical staff have duties that differ from the responsibilities of unpaid auxiliary staff. Specifically, Dr. Samuels testified that full-time staff are obligated to "be on call," teach both residents and medical students, care for indigent patients, supervise numerous clinics, participate in didactic lectures, and contribute to medical literature. According to Dr. Samuels, there were no set expectations for unpaid auxiliary staff, other than to teach residents and students by involving them in the treatment of patients. Dr. Samuels testified that unpaid physicians are not obligated to admit a certain number of patients, nor are they required to deliver a certain number of babies at the hospital.

{¶ 10} Both plaintiffs and defendants contend that Dr. Artman was not a state employee for the purposes of R.C. 9.86 and 2743.02. The parties maintain that, in every relevant way, Dr. Artman's relationship with OSUMC mirrors the doctor-institution relationship addressed in *Phillips v. The Ohio State University Medical Center*, 10th Dist. No. 12AP-414, 2013-Ohio-464, wherein the Tenth District Court of Appeals

determined that the physician was not a state "officer or employee," and therefore, not entitled to personal immunity pursuant to R.C. 9.86 and 2743.02(A)(2).

{¶ 11} In *Phillips*, the plaintiff alleged that Carol Greco, M.D., an OB/GYN, was negligent during surgery that was performed on one of her private practice patients at OSUMC. Dr. Greco held a clinical appointment with the OSU College of Medicine which included hospital privileges and required her to teach residents in her clinical practice at OSUMC. Dr. Greco did not receive any monetary compensation or malpractice insurance coverage from OSUMC for serving as an unpaid auxiliary faculty member. The court of appeals noted that Dr. Greco was not responsible for treating patients in the clinic or the labor and delivery unit.

{¶ 12} In determining whether Dr. Greco was a state employee for the purpose of immunity, the Tenth District Court of Appeals weighed several factors which were set forth in *Engel v. Univ. of Toledo College of Med.*, 130 Ohio St. 3d 263, 2011-Ohio-3375. Although the factors applied in *Engel* comprise "a non-exhaustive list," the court held that the factors were relevant in analyzing whether a volunteer clinical instructor of a state university qualified as a state employee pursuant to R.C. 109.36(A)(1). In *Engel*, the Supreme Court of Ohio considered the existence of a contractual relationship between the state and the physician, the degree of control the university had over the physician's actions, and payment by the university for the physician's services. *Id.* at ¶ 10. In both *Engel* and *Phillips*, the court determined that the physician was not a state employee, and thus not entitled to immunity, based upon the findings that there was no employment contract, that no monetary compensation was paid, and that there was no exercise of state control over the physician. *Id.* at ¶ 16, *Phillips*, *supra* at ¶ 10.

{¶ 13} With regard to the existence of an employment contract, Dr. Artman concedes that there was no express contract of employment with either OSU or OSUMC and that she did not receive monetary compensation from defendants. However, Dr. Artman argues that her unpaid auxiliary faculty appointment was

contractual inasmuch as she was "legally required" to instruct OSU residents and, in exchange for her services, she received hospital privileges at OSUMC. The court notes that the court of appeals rejected this argument in *Phillips*. *Phillips*, ¶ 11. Furthermore, in *Phillips*, the evidence showed that, in addition to hospital privileges at OSUMC, Dr. Greco received parking privileges and access to football tickets; Dr. Artman did not receive even these minimal benefits. Dr. Artman also contends that she had a "binding contract" with OSU based upon benefits that defendants received as a result of the support unpaid auxiliary faculty members provide to the residency program, including Medicare or Medicaid payments and accreditation of the OB/GYN residency program. However, even if the court were to accept Dr. Artman's "argument that her arrangement with OSUMC was *contractual*, it did not necessarily equate to a contract of *employment.*" *Id.* at ¶ 12. Accordingly, the court finds that Dr. Artman did not have a contract of employment with defendants.

{¶ 14} Furthermore, the evidence presented did not establish that defendants either held or exercised a significant degree of control over Dr. Artman's medical practice. Neither OSUMC nor OSU restricted Dr. Artman's private practice. Specifically, defendants did not control which patients Dr. Artman treated in her office, when patient appointments were scheduled, how much she charged for her services, or how her professional fees were bill and collected. Unlike OSUMC's full-time faculty, Dr. Artman did not practice through the university's practice plan. As stated above, Dr. Artman was not required to perform didactic teaching or lectures, contribute to medical literature, provide medical care to defendants' indigent patients, participate in resident clinics, or provide written evaluations for the residents she taught.

{¶ 15} Dr. Artman also alleges that she is entitled to civil immunity pursuant to R.C. 109.36(A)(1)(a) inasmuch as she was serving in an "elected or appointed position" with the state. However, the evidence does not support a finding that Dr. Artman was holding an elected office or position, or that she "possessed any sovereign functions of government to be exercised by [her] for the benefit of the public either of an executive,

legislative, or judicial character." *Engel, supra*, ¶ 19; *Phillips* at ¶ 17. Furthermore, Dr. Artman was not rendering medical services pursuant to a personal services contract or a purchased service contract necessary to establish an employment relationship pursuant to 109.36(A)(1)(b) or (c).

{¶ 16} For the reasons stated above, the magistrate finds that Dr. Artman was not an officer or employee of the state of Ohio as defined in R.C. 109.36. Therefore, the magistrate recommends that Sarah Artman, M.D., is not entitled to immunity pursuant to R.C. 9.86 and 2743.02(F), and that the courts of common pleas have jurisdiction over any civil actions that may be filed against her based upon the allegations in this case.

{¶ 17} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ANDERSON M. RENICK
Magistrate

cc:

Ellen M. McCarthy                          Jeffrey L. Maloon
1370 Ontario Street, Suite 100             Assistant Attorney General
Cleveland, Ohio 44113-1792                 150 East Gay Street, 18th Floor
                                           Columbus, Ohio 43215-3130

Julia A. Turner
Special Counsel to Attorney General
1 South Main Street, Suite 1800
Dayton, Ohio 45402-2017

Mark L. Schumacher
Sandra R. McIntosh
Special Counsel to Attorney General
Capitol Square Office Building
65 East State Street, Suite 800
Columbus, Ohio 43215-4247

004
Filed June 21, 2013
To S.C. Reporter October 31, 2013