[Cite as *White v. Youngstown State Univ.*, 2022-Ohio-3383.]

| | |
|---|---|
| DAVID R. WHITE, Admr. | Case No. 2022-00169JD |
| Plaintiff | Judge Patrick E. Sheeran<br>Magistrate Anderson Renick |
| v. | |
| YOUNGSTOWN STATE UNIVERSITY | <u>DECISION OF THE MAGISTRATE</u> |
| Defendant | |

{¶1} On August 5, 2022, an evidentiary hearing was held to determine whether Thomas Gifford, D.O. is entitled to civil immunity pursuant to R.C. 2743.02(F) and R.C. 9.86. Dr. Gifford did not testify at the hearing; however, his deposition testimony was admitted into evidence.[1] Joseph Mistovich, who served as the chairperson of the department at Youngstown State University (YSU) where Dr. Gifford served as medical director for a paramedic program, testified at the hearing.

{¶2} The court has exclusive, original jurisdiction to determine whether a state officer or employee is entitled to personal immunity under R.C. 9.86 and whether the courts of common pleas have jurisdiction over a civil action brought against the state officer or employee. R.C. 2743.02(F); *Engel v. Univ. of Toledo College of Medicine*, 130 Ohio St.3d 263, 2011-Ohio-3375, 957 N.E.2d 764, ¶ 4; *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006 Ohio 6208, 857 N.E.2d 573, ¶ 14.

{¶3} R.C. 2743.02(F) provides, in part:

{¶4} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or

---

[1] Dr. Gifford's August 5, 2022 motion to file a brief in support of his argument that he is entitled to immunity is GRANTED.

reckless manner shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶5} R.C. 9.86 provides, in part:

{¶6} "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶7} On May 1, 2019, Dr. Gifford provided care to Helena M. Moore at Mercy Health Hospital. Plaintiff alleges that Dr. Gifford's medical negligence caused Moore's death. Plaintiff, who is the administrator of the estate of Helena M. Moore, filed a medical negligence action against Dr. Gifford, and others, in the Mahoning County Common Pleas Court. In the common pleas action, Dr. Gifford has asserted that he is entitled to personal immunity as an employee of YSU. (Complaint, ¶ 5-8.) Plaintiff contends that Dr. Gifford is not entitled to personal immunity because he was not acting within the course and scope of his state employment when he rendered medical care to Ms. Moore on May 1, 2019.

{¶8} Defendant YSU has generally denied the allegations in the complaint, and it maintains that Dr. Gifford was working outside the course and scope of his appointment with YSU at the time of the alleged malpractice. Dr. Gifford contends that he was employed by the state when he provided care to Helena Moore, that his duties as medical director of YSU's Paramedic Program required him to provide educational services to paramedic students, and that, in accordance with his agreement with YSU, he was required to see patients in an Emergency Department at least 40 hours per month. Dr.

Gifford maintains that, even if no paramedic student was present with him at the time he provided care to Helena Moore, his clinical practice still advanced the interest of the state.

{¶9} The evidence established that Dr. Gifford was licensed to be a Doctor of Osteopathic Medicine in Ohio in 2009 and that he has served as a paramedic since he was 18 years old.  On September 26, 2014, Dr. Gifford and YSU entered into agreement for Dr. Gifford to serve as Medical Director for YSU's Emergency Medical Services Program.  Under the agreement, Dr. Gifford was required to "[be] currently employed and actively engaged in the practice of emergency medicine by providing acute care to emergency department patients at least 40 hours per month on average."  (Exhibit D.) He was also "responsible for all medical aspects of the Emergency Medical Technology program, including but not limited to:

1) Review and approval of the educational content of the program curriculum to certify its ongoing appropriateness and medical accuracy,

2) Review and approval of the quality of medical instruction, supervision, and evaluation of the students in all areas of the program,

3) Review and approval of the progress of each student throughout the program and assist in the development of appropriate corrective measures when a student does not show adequate progress,

4) Assurance of the competence of each graduate of the program in the cognitive, psychomotor, and affective domains,

5) Responsibility for cooperative involvement with the program director,

6) Adequate controls to assure the quality of the delegated responsibilities."  (Exhibit D.)

{¶10} As the Medical Director of the paramedic program, Dr. Gifford received compensation for teaching a cardiovascular course in the program.  (Exhibit I, Gifford Deposition, 36-37.)  Dr. Gifford had a separate teaching contract with YSU.  (Exhibit I, Gifford Deposition, 37.)  The cardiovascular course did not have a clinical component that

required students to work with Dr. Gifford or shadow him in his work as an emergency room physician. (Exhibit I, Gifford Deposition, 42; Mistovich testimony.) YSU did not provide Dr. Gifford with health, dental, and vision insurance for serving as Medical Director of the YSU paramedic program. (Exhibit I, Gifford Deposition, 22-23.) Nor did YSU provide Dr. Gifford with a retirement plan as Medical Director of the paramedic program. Dr. Gifford did, however, receive credits to an Ohio public-employee retirement system. (Exhibit I, Deposition, 24.)

{¶11} In 2015, Dr. Gifford entered into an employment contract with MVES Boardman, LLC. (Exhibit B.) Under the contract with MVES Boardman, Dr. Gifford was required to "provide services as an emergency medicine physician of no less than 960 hours per year." (Exhibit B.) On May 1, 2019, Dr. Gifford provided medical care to Helena Moore at Mercy Health – St. Elizabeth Boardman Hospital Emergency Department. (Exhibit J.) At the time of the treatment, Dr. Gifford was employed both by MVES Boardman, and by Alteon, which had contracted with Mercy Health to provide emergency room services. (Exhibits G and F; Gifford Deposition, 16.) Dr. Gifford testified that Alteon is "a staffing group that has been bought multiple times over the last several years, so our name has changed frequently, but we've been the same group." (Exhibit I, Gifford Deposition, 13.) Alteon is now U.S. Acute Care Solutions. (Exhibit I, Gifford Deposition, at 13-14.) Dr. Gifford testified that he did not know if MVES was associated with U.S. Acute Care Solutions. According to Dr. Gifford, MVES Boardman was a subsidiary that was in existence during his employment with Alteon, and "the previous company that our paychecks would come from." (Exhibit I, Gifford Deposition, 14-15.)

{¶12} Determining whether a person is entitled to R.C. 9.86 immunity "requires a two-part analysis, the first part of which is to determine whether the person claiming immunity is a state officer or employee. If the person claiming immunity is a state officer or employee, the second part of the analysis is to determine whether that person was acting within the scope of employment when the cause of action arose." *Engel* at ¶ 6,

citing *Theobald* at ¶ 14. Whether an individual "is entitled to immunity is a question of law." *Garvin v. State*, 10th Dist. Franklin No. 97API09-1279, 1998 Ohio App. LEXIS 2208, at *7 (May 21, 1998), citing *Conley v. Shearer*, 64 Ohio St. 3d 284, 595 N.E.2d 862 (1992). Whether an individual "is acting within the course and scope of his employment or is a state employee is a question of fact." *Garvin*, *supra*, at *7 (May 21, 1998), citing *Tschantz v. Ferguson*, 49 Ohio App. 3d 9, 550 N.E.2d 544 (10th Dist.1989).

{¶13} With respect to the second prong of the two-part analysis discussed in *Engel*, the Ohio Supreme Court has noted:

> The Revised Code does not define "scope of employment." The concept generally denotes an agency relationship in which the agent or employee is engaged in an activity that is logically related to the business of the principal or employer. See *Ruckman v. Cubby Drilling, Inc.* (1998), 81 Ohio St.3d 117, 120, 1998 Ohio 455, 689 N.E.2d 917; *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 278, 74 O.O.2d 427, 344 N.E.2d 334. For purposes of personal immunity under R.C. 9.86, a state employee acts within the scope of employment if the employee's actions are "in furtherance of the interests of the state." *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 287, 1992 Ohio 133, 595 N.E.2d 862. Thus, a state employee's duties should define the scope of employment.

*Theobald* at ¶ 15.

{¶14} "A health-care practitioner who has dual status as a private practitioner and as an employee of a state medical institution is potentially immune from liability for medical malpractice only when he or she is performing duties for the state." *Theobald* at ¶ 16. "[T]he question of scope of employment must turn on what the practitioner's duties are as a state employee and whether the practitioner was engaged in those duties at the time of an injury. Thus, proof of the content of the practitioner's duties is crucial. The Court of Claims must have evidence of those duties before it can be determined whether

the actions allegedly causing a patient's injury were 'in furtherance of the interests of the state' or, in other words, within the scope of employment."

*Id.* at ¶ 23.

{¶15} The evidence establishes that, on May 1, 2019, Dr. Gifford held a dual status both as a private practitioner who was employed by Alteon and/or MVES Boardman, LLC, and as a state employee in his role as Medical Director for Youngstown State University's Emergency Medical Services Program. To be qualified to serve as Medical Director, YSU's contract with Dr. Gifford required him to "[be] currently employed and actively engaged in the practice of emergency medicine by providing acute care to emergency department patients at least 40 hours per month on average." (Exhibit D.)

{¶16} Dr. Gifford testified that his responsibilities as Medical Director required him "to provide direct educational services to the paramedics, to review their curriculum and ensure compliance with the national accrediting agencies and to review their performance in the hospital when they spend time us and other physicians and to be available for the program coordinator, for any questions she may have, and to routinely review the curriculum, as well as other administrative duties as needed." (Exhibit I, Gifford Deposition, 30-31.) According to Dr. Gifford, students from the paramedic program would at times work with him at St. Elizabeth Boardman Hospital. *Id.* Dr. Gifford explained that each student had to complete an externship course during which they spend time with a physician in the emergency department. Dr. Gifford testified that several volunteer physicians worked with the paramedic students. Dr. Gifford worked with students throughout the course and each student who was assigned to him was required to spend an entire shift with him to successfully complete the program. (Exhibit I, Gifford Deposition, 30-31.)

{¶17} Joseph Mistovich testified credibly that, on May 1, 2019, no YSU paramedic student was on a clinical rotation with Dr. Gifford. Although a prerequisite for Dr. Gifford to serve as Medical Director was to be employed and actively engaged in the practice of

emergency medicine by providing acute care to emergency department patients at least 40 hours per month on average, the court finds that when he provided medical care to Helena Moore on May 1, 2019, his care was not performed in furtherance of the interests of YSU's paramedic program. "A health-care practitioner who has dual status as a private practitioner and as an employee of a state medical institution is potentially immune from liability for medical malpractice *only when he or she is performing duties for the state*." (Emphasis added.) *Theobald* at ¶ 16.

{¶18} The court concludes that Dr. Gifford actions on May 1, 2019, were in furtherance of the interests of his private employer, not YSU. Accordingly, the court finds that Dr. Gifford is not entitled to personal immunity under R.C. 9.86 and that Ohio courts of common pleas should have jurisdiction over civil actions for actions alleged in a complaint before the Mahoning County Common Pleas Court.

{¶19} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

ANDERSON RENICK
Magistrate

Filed August 31, 2022

Sent to S.C. Reporter 9/26/22