[Cite as *Fisher v. State*, 2014-Ohio-2280.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jocelyne Claire Fisher et al., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 13AP-38 |
| Julianna Fisher et al., | | (Ct. of Cl. No. 2011-08679) |
| | : | |
| Plaintiffs-Appellees, | : | (REGULAR CALENDAR) |
| | : | |
| v. | : | |
| State of Ohio c/o Ohio Attorney General Mike DeWine et al., | : | |
| Defendants-Appellees. | : | |

---

D E C I S I O N

Rendered on May 29, 2014

---

*Blaske & Blaske, P.L.C.*, and *Thomas H. Blaske*, for appellants.

*Michael DeWine*, Attorney General, and *Anne Berry Strait*, for appellee The University of Toledo Medical Center.

---

APPEAL from the Court of Claims of Ohio.

BROWN, J.

{¶ 1} Plaintiffs-appellants, Jocelyne Claire Fisher, and her parents, Lynnette and Michael Fisher, appeal from a judgment of the Court of Claims of Ohio concluding that Howard Black, M.D., is not entitled to civil immunity pursuant to R.C. 9.86 and 2743.02(F).

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   In April 2007, 14-year-old Jocelyne underwent surgery at Toledo Children's Hospital ("Toledo Children's"), a private hospital, related to her acute myeloid leukemia. Anesthesia care and treatment was provided by anesthesiologist Dr. Black, and anesthesiology resident Christopher Lewis, M.D.  At the time of the surgery, Dr. Black was employed by a private practice group, Anesthesiology Consultants of Toledo, Inc. ("ACT") and practiced at Toledo Children's. He also held an appointment as a volunteer Clinical Assistant Professor of Anesthesiology at the University of Toledo ("UT"), and, in that capacity, supervised medical students and residents during their rotations at Toledo Children's.  Dr. Lewis was a first-year UT anesthesiology resident on rotation at Toledo Children's.  Dr. Black prepared the anesthesia plan for Jocelyne's surgery, reviewed it with Dr. Lewis prior to surgery, and supervised the anesthesia treatment provided by Dr. Lewis during the surgery.   Post-operative complications resulted in long-term debilitating physical and cognitive injuries to Jocelyne.

{¶ 3}   In September 2008, appellants filed a medical malpractice action in the Lucas County Court of Common Pleas against The Toledo Hospital, Toledo Children's (a subsidiary of The Toledo Hospital), and their parent corporation, ProMedica Health Care System, Inc. (collectively "Toledo Hospital").  Appellants asserted that Toledo Hospital was vicariously liable for the alleged negligence of the physicians involved in Jocelyne's surgery.  Appellants voluntarily dismissed the action pursuant to Civ.R. 41(A) and refiled it in March 2010.

{¶ 4}   In October 2010, Toledo Hospital filed a motion for summary judgment with regard to appellants' claims of negligence related to the anesthesia care and treatment provided by Dr. Black.  Specifically, Toledo Hospital alleged that, at the time of the alleged malpractice, Dr. Black was not an employee of Toledo Hospital and was personally immune from suit pursuant to R.C. 9.86 and 2743.02(F) because he was a state employee, supervising Dr. Lewis and, thus, was acting within the scope of his appointment to the clinical faculty at UT.  Appellants filed a memorandum in opposition, contending that Dr. Black was not an employee of UT, and, even if he could be construed as a state employee, when he provided anesthesiology care to Jocelyne he was acting as a private physician and, therefore, outside the scope of any such state employment.

Concluding that it lacked jurisdiction over Toledo Hospital's assertion that Dr. Black was entitled to personal immunity under R.C. 9.86 and 2743.02(F), the court sua sponte dismissed appellants' anesthesiology malpractice claim without prejudice to allow the Court of Claims to determine the immunity issue.

{¶ 5} Thereafter, in June 2011, appellants filed a medical negligence action against UT in the Court of Claims. The court stayed the action pending final disposition of the Lucas County litigation. After receiving notification that the Lucas County action had been resolved, the court lifted the stay and set the case for an evidentiary hearing on November 30, 2012. Dr. Black was apprised of the hearing and his right to participate in the immunity determination. Following the evidentiary hearing, the court filed a judgment entry on December 17, 2012, finding that Dr. Black is not a state "officer or employee," as defined in R.C. 109.36(A), and, therefore, is not entitled to personal immunity under R.C. 9.86 and 2743.02(F).

## II. ASSIGNMENT OF ERROR

{¶ 6} Appellants filed a timely appeal, presenting the following assignment of error for our review:

> Plaintiffs-Appellants respectfully submit that the Court of Claims erred in its decision that "Howard Black, M.D. is not entitled to immunity pursuant to R.C. 9.86 and 2743.02(F)."

## III. DISCUSSION

{¶ 7} Appellants' sole assignment of error challenges the Court of Claims' determination that Dr. Black is not entitled to immunity under R.C. 9.86 and 2743.02(F).

{¶ 8} R.C. 9.86 states that "no officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." "Notably, 'R.C. 9.86 is inclusive and makes no exception for persons who may simultaneously have other employment interests.' " *Poe v. Univ. of Cincinnati,* 10th Dist. No. 12AP-929, 2013-Ohio-5451, ¶ 6, quoting *Theobald v. Univ. of Cincinnati,* 111 Ohio St.3d 541, 2006-Ohio-6208, ¶ 25.

{¶ 9}   R.C. 2743.02(F) sets forth the procedure for determining the immunity R.C. 9.86 provides, stating "[a] civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶ 10} "The issue of whether R.C. 9.86 provides * * * immunity must first be resolved in the court of claims because the 'state's liability is dependent upon whether a claimant proves that the employee "would have personal liability for his acts or omissions but for the fact that the officer or employee has personal immunity." ' " *Potavin v. Univ. Med. Ctr.,* 10th Dist. No. 00AP-715 (Apr. 19, 2001), quoting *Campbell v. Johnson,* 10th Dist. No. 99AP-483 (Dec. 30, 1999), quoting R.C. 2743.02(A)(2).

{¶ 11} Accordingly, "whether a doctor is entitled to personal immunity from liability under R.C. 9.86 involves a question of law, an issue over which the Court of Claims has exclusive, original jurisdiction." *Marotto v. Ohio State Univ. Med. Ctr.,* 10th Dist. No. 12AP-27, 2012-Ohio-6158, ¶ 9, citing *Nease v. Med. College Hosps.,* 64 Ohio St.3d 396, 400 (1992). "If the Court of Claims determines the employee is immune from liability, the claimant in the underlying action must assert his or her claims against the state and the state shall be liable for the employee's deeds or omissions. R.C. 2743.02(A)(2)." *Poe* at ¶ 7.

{¶ 12}  When determining whether an individual is entitled to immunity under R.C. 9.86, the Court of Claims must determine (1) whether the individual was a state "officer or employee," and if so, (2) whether the individual was acting within the scope of employment when the cause of action arose.  *Engel v. Univ. of Toledo College of Medicine,* 130 Ohio St.3d 263, 2011-Ohio-3375, ¶ 6, citing *Theobald* at ¶ 14.  " 'If the court determines that the practitioner is not a state employee, the analysis is completed and R.C. 9.86 does not apply.' " *Phillips v. Ohio State Univ. Med. Ctr.,* 10th Dist. No. 12AP-414, 2013-Ohio-464, ¶ 7, quoting *Theobald* at ¶ 30.

{¶ 13} For purposes of R.C. 9.86 and 2743.02(F), "officer or employee" must be defined in accordance with R.C. 109.36(A). *State ex rel. Sanquily v. Court of Common Pleas of Lucas Cty.,* 60 Ohio St.3d 78 (1991). Relevant to this litigation is the definition of "officer or employee" set forth in R.C. 109.36(A)(1)(a). That provision defines "officer or employee" as "[a] person who, at the time a cause of action against the person arises, is serving in an elected or appointed office or position with the state or is employed by the state." Although the Court of Claims determined that Dr. Black is not an "officer or employee" because he was neither serving in an elected or appointed office or position with the state nor was employed by the state at the time the cause of action arose, appellants challenge only the latter determination.

{¶ 14} At the November 30, 2012 evidentiary hearing, the parties stipulated that Dr. Lewis, as a medical resident at UT, a state university, is immune from liability pursuant to R.C. 9.86 and 2743.02(F). The evidence submitted by appellants at the hearing consists of (1) hospital records related to Jocelyne's surgery, (2) affidavit, deposition, and trial testimony of Dr. Black submitted in the Lucas County action, (3) deposition testimony of Dr. Lewis submitted in the Lucas County action, (4) Dr. Black's March 21, 2005 letter of appointment to the UT volunteer faculty, and (5) UT Faculty Rules and Regulations. No live testimony was offered by either party or by Dr. Black, and neither UT nor Dr. Black submitted any documentary evidence.

{¶ 15} The facts set forth in the second paragraph of this decision are derived from the documentary evidence submitted by appellants. As noted above, that documentary evidence includes Dr. Black's March 21, 2005 letter of appointment to the UT volunteer faculty and UT's Faculty Rules and Regulations. Appellants rely extensively on those two documents in support of their appeal.

{¶ 16} In the present case, appellants dispute the Court of Claims' determination that Dr. Black is not a state "officer or employee" under the definition set forth in R.C. 109.36(A)(1)(a). Appellants contend that Dr. Black is "[a] person * * * employed by the state" at the time the cause of action arose by virtue of his status as a volunteer faculty member at UT.

{¶ 17} Citing *Theobald,* appellants contend that "[c]ourts have held that clinical instructors, performing essentially the same duties as Dr. Black performed while

supervising Dr. Lewis in this case, are 'officer[s] or employee[s]' for purposes of R.C. 9.86 immunity." (Appellants' brief, 13.) However, as noted by the Supreme Court of Ohio in *Engel* at ¶ 9, *Theobald* did not so hold. The court expressly stated "[a]lthough *Theobald* involved a similar medical-malpractice suit filed against several doctors, the case is of little help here. The issue whether the doctors were state employees was not before the court because it had not been appealed. * * * The ultimate issue in *Theobald* was whether the doctors were acting within the scope of employment when the alleged negligence occurred, which is not relevant here." Accordingly, appellants' reliance on *Theobald* for their espoused proposition is misplaced.

{¶ 18} However, the question of whether a volunteer clinical instructor at a state university is an "officer or employee" for purposes of personal immunity under the definition set forth in R.C. 109.36(A)(1)(a) was addressed in *Engel.* There, the physician, Dr. Skoskiewicz, was employed by a private practice corporation and practiced general surgery at a private hospital that was not affiliated with any state sponsored institution. Dr. Skoskiewicz also had been appointed as a volunteer clinical assistant professor at UT, and was acting within the scope of that appointment at the time of the alleged malpractice because he was being observed by a medical student.

{¶ 19} The Supreme Court determined that Dr. Skoskiewicz was not entitled to immunity under R.C. 9.86. While the court declined to adopt a specific formal test, it applied a non-exhaustive list of factors in addressing the immunity issue. "[E]mphasiz[ing] that other factors may be considered," the court found "helpful" the following factors: (1) whether the state and the alleged employee had a contractual relationship, (2) whether the state exercised control over the actions of the alleged employee, and (3) whether the state, or a private entity with a "symbiotic relationship" with the state, paid the alleged employee for his services. *Id.* at ¶ 10, 15.

{¶ 20} Applying these factors to Dr. Skoskiewicz, the court concluded that there was no contract of employment between UT and Dr. Skoskiewicz. The court also found that UT did not exercise control over Dr. Skoskiewicz's private practice at the private hospital. Finally, the court found that Dr. Skoskiewicz was not paid by UT or by any entity that had a close relationship to UT. *Id.* at ¶ 16.

{¶ 21} Appellants' attempts to distinguish the present case from *Engel* are unavailing. Appellants first assert that *Engel* is distinguishable because the medical student there was merely observing Dr. Skoskiewicz and did not actively participate in the procedure giving rise to the alleged medical negligence. Appellants point out that, in the present case, Dr. Lewis was actively involved in Jocelyne's treatment, as he both assessed her condition prior to surgery and actually provided the anesthesia services to her during the surgery.

{¶ 22} We first note that *Engel* contains no language suggesting that its analysis would have been different had the medical student actually participated in the medical procedure giving rise to the malpractice claim. Moreover, such a distinction is irrelevant to the issue of whether or not the volunteer faculty member is an employee of a state university. Whether teaching occurred at the time of the alleged malpractice is relevant only to the second prong of the immunity test, i.e., whether the physician seeking immunity was acting within the scope of his university employment. As *Theobald* instructs, that question is reached only *after* it is determined that the physician was an "officer or employee" of the state.

{¶ 23} Further, appellants' broad assertion that immunity depends upon whether the volunteer faculty member was acting as a collaborator with a medical student or resident is simply incorrect. Courts have found entitlement to immunity in cases where the student/resident simply observed the treatment being rendered. *See, e.g., Hans v. Ohio State Univ. Med. Ctr.,* Ct. of Cl. No. 2001-10140, 2005-Ohio-4457, cited with approval in *Theobald* at ¶ 27; *Clevenger v. Univ. of Cincinnati, College of Medicine*, 10th Dist. No. 09AP-585, 2010-Ohio-88.

{¶ 24} Appellants' next attempt to distinguish *Engel* by arguing that Dr. Black's volunteer faculty appointment letter included terms different than those contained in the appointment letter issued to Dr. Skoskiewicz. Review of both appointment letters reveals that they contain identical language. The *Engel* court expressly found that Dr. Skoskiewicz's appointment letter did not create a contract of employment. Specifically, the court averred that the letter did not show that Dr. Skoskiewicz was hired, appointed, or credentialed by UT. *Id.* at ¶ 11. The court also noted the parties' stipulations that Dr.

Skoskiewicz practiced at a private hospital which was not affiliated with or a part of any state university and was not an instrumentality of the state. *Id.*

{¶ 25} As in *Engel,* Dr. Black's appointment letter does not demonstrate that he was hired, appointed or credentialed by UT. *Id.* at ¶ 11. Rather, Dr. Black, like Dr. Skoskiewicz, practiced at a private hospital, and no evidence suggests that hospital was owned or operated by UT. Further, Dr. Black, like Dr. Skoskiewicz, was employed by a private practice group, and no evidence suggests that practice group had any affiliation with UT. As in *Engel,* we conclude that there was no contract of employment, written or oral, between UT and Dr. Black.

{¶ 26} Appellants next argue that the requirement in the appointment letter that Dr. Black abide by UT Faculty Rules and Regulations establishes that the state exercised control over his medical practice, thus making him a state employee. In *Engel,* the court expressly found that required compliance with UT Faculty Rules and Regulations did not demonstrate that UT exercised, or intended to exercise, such control over Dr. Skoskiewicz's practice of medicine as to justify a holding that he was at any time a state employee. *Id.* at ¶ 13. Appellants distinguish their argument from *Engel* because they submitted a copy of the Faculty Rules and Regulations as evidence at the immunity hearing. Appellants note the Supreme Court's averment that "[w]hether the rules, regulations, policies, and procedures cited in the [appointment letter] would control the way Dr. Skoskiewicz practiced medicine is a matter of pure speculation." *Id.*

{¶ 27} Contrary to appellants' urging, the UT Faculty Rules and Regulations do not establish that UT exercised control over Dr. Black's practice of medicine. The Rules and Regulations set forth clear distinctions between regular, full-time paid faculty members and volunteer faculty members such as Dr. Black. Paragraphs F.1 and F.2 of the Rules and Regulations, respectively, establish that "regular appointments" are held by full-time and part-time salaried members of the faculty, while "community-based," or "volunteer" appointments are conferred on individuals who devote time and effort to official programs and activities of the university, but are without tenure or remuneration. Further, paragraph E.4, particularly relied upon by appellants, applies only to full-time members of the faculty who may practice only as members of practice plans approved by the UT Board of Trustees. Appellants point to no evidence establishing that Dr. Black was

a full-time member of the faculty or that his private practice corporation had any affiliation with UT. Further, appellants' arguments regarding the significance of other provisions of the Rules and Regulations are vague, underdeveloped, and conclusory.

{¶ 28} Finally, appellants contend that a volunteer faculty member may be considered a state employee for purposes of R.C. 9.86 immunity solely as a result of their teaching responsibilities. To the contrary, our research reveals volunteer faculty members have been found to be state employees for purposes of immunity in situations where they are employed by a practice plan corporation that is closely affiliated with and controlled by the state university. For example, in *Potavin,* this court held that a volunteer clinical instructor for the University of Cincinnati Medical College's ("UCMC") Department of Obstetrics and Gynecology ("OBGYN Department") was an employee of the state. The evidence in that case established that UCMC had such a high degree of control of the instructor's practice plan that the dean had to approve the amount of compensation the practice plan employees received. Further, the private practice plan contributed a significant amount of money to the OBGYN Department. In addition, the OBGYN Department director testified that the practice plan would not exist but for its relationship with UCMC. Given this symbiotic relationship, we concluded that UCMC and the practice plan functioned as one entity, even though they were separate legal entities. We also noted that UCMC compensated the instructor for her services through the practice plan which was controlled exclusively by UCMC. Accordingly, this court held that the volunteer clinical instructor was a state employee.

{¶ 29} Applying the factors discussed in *Engel* and three post-*Engel* decisions of this court—*Phillips, Poe,* and *Gharibshahi v. Ohio,* 10th Dist. No. 13AP-844, 2014-Ohio-1529, to the present case, we first note that Dr. Black's volunteer faculty position was without monetary compensation. As previously determined, the March 2005 letter of appointment does not create a contract of employment between Dr. Black and UT. Further, no evidence establishes that UT possessed a sufficient degree of control over the manner and means of Dr. Black's ability to practice medicine. We note particularly that no evidence establishes that UT dictated Dr. Black's schedule or which patients he saw in his private office, required him to admit a certain percentage of his private patients to UT, required him to provide care to UT patients, required him to perform the clinical duties of

a full-time faculty member, collected any portion of his or ACT's billings or fees, or provided him or ACT with malpractice insurance. Moreover, no evidence establishes that UT and Dr. Black's private practice group, ACT, functioned as one entity or were so intertwined as to suggest that Dr. Black's ACT salary should be viewed as payment from UT.

{¶ 30} Finally, we address appellants' contention that principles of judicial estoppel preclude UT from taking inconsistent positions regarding Dr. Black's immunity. Specifically, appellants maintain that UT argued in the Lucas County action that Dr. Black is entitled to R.C. 9.86 immunity, but have reversed course in the present action, asserting now that Dr. Black is not entitled to R.C. 9.86 immunity.

{¶ 31} "The doctrine of judicial estoppel prohibits a party ' "from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment." ' " *Cristino v. Ohio Bur. of Workers' Comp.,* 10th Dist. No. 12AP-60, 2012-Ohio-4420, ¶ 44, quoting *Greer-Burger v. Temesi,* 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 25, quoting *Griffith v. Wal-Mart Stores, Inc.,* 135 F.3d 376, 380 (6th Cir.1998). "The doctrine applies only when a party shows that its opponent: (1) took a contrary position, (2) under oath in a prior proceeding, and (3) the prior position was accepted by the court." *Id.* at ¶ 44.

{¶ 32} Assuming, without deciding, that the judicial estoppel doctrine applies to R.C. 9.86 immunity determinations and that appellants have established the prerequisites set forth in *Cristino,* we note that the issue was never raised before the Court of Claims. It is settled law that a litigant's failure to raise issues for the trial court's determination waives those issues for purposes of appeal. *State v. Johnson,* 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 14. *See also Gen. Motors Acceptance Corp. v. Ferguson,* 10th Dist. No. 04AP-795 (Mar. 3, 2005).

{¶ 33} Moreover, even if appellants had raised the issue in the trial court, they did not properly raise it on appeal, having asserted it for the first time in their reply brief. Under App.R. 16(C), an appellant may file a brief "in reply to the brief of the appellee." " 'A reply brief affords an appellant an opportunity to respond to an appellee's brief, * * * and it is improper to use it to raise a new issue.' " *State v. Shedwick,* 10th Dist. No. 11AP-

709, 2012-Ohio-2270, ¶ 6, quoting *State v. Mitchell,* 10th Dist. No. 10AP-756, 2011-Ohio-3818, ¶ 47.  Accordingly, we will not address appellants' judicial estoppel argument.

## IV.  DISPOSITION

{¶ 34} For the foregoing reasons, we conclude that the Court of Claims properly determined that Dr. Black is not a state employee entitled to personal immunity under R.C. 9.86 and 2743.02(F).  Accordingly, we overrule appellants' single assignment of error, and affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

CONNOR and DORRIAN, JJ., concur.

_____