[Cite as *Wee Care Child Ctr., Inc. v. Ohio Dept. of Job & Family Servs.*, 2014-Ohio-2913.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Wee Care Child Center, Inc. et al.,      :

        Plaintiffs-Appellants,      :

       No. 13AP-1004

v.      :      (Ct. of Cl. No. 2010-11901)

Ohio Department of Job      :      (REGULAR CALENDAR)
and Family Services et al.,

         :

        Defendants-Appellees.      :

         :

D E C I S I O N

Rendered on June 30, 2014

*Favor Legal Services*, and *H. Macy Favor, Jr.*, for appellants.

*Michael DeWine*, Attorney General, *Velda K. Hofacker* and
*Eric A. Walker*.

APPEAL from the Court of Claims of Ohio

O'GRADY, J.

{¶ 1} Plaintiffs-appellants Wee Care Child Center, Inc. ("Wee Care") and Tonya Brown (collectively "appellants") appeal a judgment of the Court of Claims of Ohio granting defendants-appellees the state of Ohio and Ohio Department of Job and Family Services ("ODJFS") (collectively "appellees") summary judgment. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Brown owned and operated Wee Care, a now-defunct day care center. ODJFS issued Wee Care a license to operate from December 29, 2003 to December 29, 2005. Before this license expired, Wee Care timely applied for renewal, and ODJFS

employee Michelle Vent conducted a renewal inspection. She found Wee Care non-compliant with multiple regulations, and ODJFS could not renew Wee Care's license until these issues were resolved. According to Vent, Wee Care had a history of non-compliance issues and complaints. However, consistent with ODJFS' general practice, she worked with Wee Care in the hopes it would become fully compliant. Thus, ODJFS did not either renew Wee Care's license or try to revoke it before it expired. ODJFS believed Wee Care could continue to operate under R.C. 119.06 until ODJFS took such action.

{¶ 3} According to Vent, Wee Care never became fully compliant. On February 27, 2006, she and Peggy Blevins, her supervisor, recommended revocation of Wee Care's license. Several ODJFS employees had to approve the recommendation before ODJFS sent a proposed adjudication order ("PAO") to Wee Care on June 19, 2006. Before a hearing on the PAO, ODJFS discovered errors in the PAO and withdrew it without prejudice. ODJFS took steps to prepare a new PAO, but did not issue one before Wee Care closed in March 2007.

{¶ 4} In 2006 and 2007, ODJFS issued amended licenses to Wee Care, all of which still had an expiration date of December 29, 2005. According to Vent, an amended license is not a renewal but simply acknowledges a change relative to the license. In July 2006, at Brown's request, ODJFS changed Wee Care's administrator. ODJFS also reduced Wee Care's capacity from 88 to 87 children. In August 2006, ODJFS further reduced Wee Care's capacity to 74 children, and in January 2007, reduced it to 38 children. The August and January reductions were made at Wee Care's request.

{¶ 5} Wee Care had a contract with the Franklin County Department of Job and Family Services ("FCDJFS") in which FCDJFS agreed to purchase and Wee Care agreed to provide publicly funded child care services. Wee Care earned over 90 percent of its revenue through this contract. FCDJFS did not renew this contract after it expired in June 2006. Subsequently, parents receiving public assistance removed their children from the center, and Wee Care's enrollment plunged from 98 percent to 1 percent of capacity. Appellants also had difficulty maintaining business liability insurance and obtaining a loan while Wee Care operated on an expired license.

{¶ 6} Appellants filed several lawsuits stemming from these events. *See Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 844-46 (6th Cir.2012). In the present matter,

appellants alleged claims against appellees for tortious interference with contracts and business relationships, civil conspiracy, fraud, misrepresentation, negligence, negligent infliction of emotional distress ("NIED"), and breach of contract and express warranty. Appellants also claimed eight current or former ODJFS employees, including Vent, Blevins, and Harrison, were not entitled to civil immunity for their actions. In addition, appellants sought certification of a class consisting of persons or entities "who possessed as of December 1, 2005 through the present, a full [l]icense to operate as an Ohio day care center who were subject to the same and/or similar unconstitutional, fraudulent, and tortious conditions caused by the [a]gents [of the state and ODJFS] as alleged in this Amended Complaint that resulted in a complete loss of property, income, and opportunity costs." (R. 11, ¶ 16.)

{¶ 7} During the proceedings, appellants filed a motion to compel discovery because appellees refused to provide information that would help them identify class members and locate witnesses to testify operating a day care with an expired license "will lead to financial disaster." (R. 35, 3.) Appellees claimed the requests sought irrelevant or non-existent information and would be overly burdensome and expensive to comply with. The Court of Claims denied the motion because the court had not certified a class (and the burden and expense issues).

{¶ 8} Appellants filed a motion for summary judgment, in part seeking a determination about the immunity of ODJFS employees. The central theme of the motion was the employees conspired with FCDJFS in a plan appellants termed the "Zero-out Procedure," which was designed to put Wee Care out of business without due process of law. Appellants' contention rested in large part on the following deposition testimony of Lemuel Harrison, a former ODJFS staff attorney:

> Q. * * * Now, Mr. Harrison, [Wee Care's] license was changed four times after its expiration date, and you couldn't at least out of one of those four opportunities update the expiration date so it complies with 119.06?
>
> MS. HOFACKER CARR: Objection.
>
> A. We believe that it did comply with 119.06. There is a reason, Mr. Favor, why we updated for capacity.

If you look at each of these licenses -- I didn't memorize the numbers on it. The only way we do that when the license has expired is that we don't believe the center continues to be in compliance.

We are in essence taking the only step we can short of a hearing to reduce the population to have fewer children in care under this particular custodian who has a license. My suspicion is that each of these we reduced it.

The objection of revocation is to have the population be zero. We can't do that because of due process rights.

But if we can establish through the rules that the population -- if we can justify to the Department that the population could be reduced so there's less children in care of a particular center, we would do that, we would not reissue a license, because the objective is to take away the license.

So we would not issue a license for two years if our objective is to go to hearing within a date and have the licensed revoked within a month, that would not be something we would do.

Q. Why wouldn't you do that?

A. Renew the license for two years when we want it to be revoked, because we believe the children would be in better care, we would not want to extend it for two years.

Q. In order to revoke the license do you make the sole decision to revoke a license, or does an administrative judge make the decision to revoke a license?

A. I don't make the decision, the Department just makes a recommendation, and it's the administrative judge that makes a recommendation to the Department.

Q. So if you're making a recommendation to have a license revoked there is a chance that the administrative judge is not going to agree with you, correct?

A. Correct.

(Harrison Depo. 37-38.)

{¶ 9}   According to appellants, ODJFS employees wanted to financially ruin them. Because the employees could not prove allegations of Wee Care's non-compliance, they delayed revocation proceedings that would have triggered the right to a due process hearing.  They told appellants Wee Care could operate with an expired license under R.C. 119.06(C) but knew third-parties required an unexpired license to transact with a day care.  Appellants stated ODJFS decreased Wee Care's capacity in an effort to zero-out the population of children at the center, and while ODJFS issued a PAO, it only did so under pressure from appellants' attorney and later withdrew the PAO because it could not prove its case.

{¶ 10} The motion for summary judgment was set for non-oral hearing, as was appellees' cross-motion for summary judgment.  Then, appellants filed a motion the magistrate took as a request that the court disregard the competing summary judgment motions and proceed directly to an oral evidentiary hearing on immunity.  The magistrate denied the request, and the Court of Claims overruled appellants' objections to this ruling. After the non-oral hearing, the Court of Claims denied appellants' motion for summary judgment but granted appellees' cross-motion.

## II. ASSIGNMENTS OF ERROR

{¶ 11} Appellants appeal and present three assignments of error for our review:

ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED PLAINTIFFS THEIR MOTION TO COMPEL DISCOVERY.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFFS AN OPPORTUNITY TO CONDUCT AN IMMUNITY HEARING.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT THAT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. DISCUSSION

### A. Motion to Compel Discovery

{¶ 12} In their first assignment of error, appellants contend the Court of Claims abused its discretion when it denied their motion to compel discovery. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Civ.R. 26(B)(1). "Matters are only irrelevant at the discovery stage when the information sought will not reasonably lead to the discovery of admissible evidence." *Union Sav. Bank v. Schaefer*, 10th Dist. No. 13AP-222, 2013-Ohio-5704, ¶ 46, citing *Covington v. MetroHealth Sys.*, 150 Ohio App.3d 558, 2002-Ohio-6629, ¶ 23 (10th Dist.). "The party resisting discovery bears the burden of demonstrating to the trial court that the requested information would not meet this standard." *Id.*, citing *Bennett v. Martin*, 186 Ohio App.3d 412, 2009-Ohio-6195, ¶ 44 (10th Dist.).

{¶ 13} A party may move for an order compelling discovery. Civ.R. 37(A). However, it is "well-settled that '[a] trial court enjoys broad discretion in the regulation of discovery, and an appellate court will not reverse a trial court's decision to sustain or overrule a motion to compel discovery absent an abuse of discretion.' " *Watkins v. Holderman*, 10th Dist. No. 11AP-491, 2012-Ohio-1707, ¶ 14, quoting *Stark v. Govt. Accounting Solutions, Inc.*, 10th Dist. No. 08AP-987, 2009-Ohio-5201, ¶ 14, citing *Coryell v. Bank One Trust Co. N.A.*, 10th Dist. No. 07AP-766, 2008-Ohio-2698, ¶ 47. The phrase "abuse of discretion" implies an unreasonable, arbitrary or unconscionable attitude on the part of the court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 14} Here, appellants requested lists, organized by county, of day care centers that: (1) operated with an expired license any time from 2005 to 2011; (2) were issued an expired license from 2003 to 2011; or (3) submitted a license renewal application from 2003 to 2011 which appellees did not grant or deny. They sought copies of the expired licenses and renewal applications and contact information for ODJFS employees assigned to centers that had operated with expired licenses. Appellants requested lists, organized by county, of every provisional and full day care center license issued from 2001 to 2011 and copies of licenses issued from 2003 to 2011. They asked appellees to produce by

county or make available copies of files on day care centers in operation from 2003 to 2011.

{¶ 15} On appeal, appellants claim this discovery could have led to witnesses who could "testify as to the implementation and effects" of the Zero-out Procedure. (Appellants' Brief, 22.) However, at the trial level, appellants only argued the requested information would help them identify members of their proposed class and find witnesses to testify about the financial impact of operating a day care with an expired license. Additionally, contrary to appellants' contention, the Court of Claims did not deny the motion to compel based on cost concerns alone. The court reasoned that appellants did not need discovery to identify members of a class the court never certified. Though not explicitly stated by the court, the discovery requests were not reasonably calculated to lead to admissible evidence regarding appellants' individual causes of action either. Although issues of undue burden and expense would have been more appropriately raised in a Civ.R. 26(C) motion for a protective order, it was not unreasonable, arbitrary or unconscionable for the Court of Claims to consider those factors, along with the irrelevance of the requested discovery, in denying the motion to compel. Therefore, we overrule the first assignment of error.

### B. R.C. 9.86 Immunity Hearing

{¶ 16} Under their second assignment of error, appellants contend the Court of Claims erred when it refused to conduct an oral evidentiary hearing on the issue of whether the eight ODJFS employees were entitled to immunity under R.C. 9.86.

{¶ 17} All of the parties, starting with appellants, asked the court to resolve the immunity issue on summary judgment under Civ.R. 56. Although Civ.R. 56 references a "hearing" with regard to such a motion, nothing in the rule contemplates an evidentiary hearing. *Castrataro v. Urban*, 10th Dist. No. 03AP-128, 2003-Ohio-4705, ¶ 16. To the contrary, evidence must be submitted before the hearing date. *See id*; *Spagnola v. Spagnola*, 7th Dist. No. 07 MA 178, 2008-Ohio-3087, ¶ 43; *see, e.g.*, *Blair v. Harmon*, 1st Dist. No. C-960093 (Nov. 13, 1996) ("The concept that the basic purpose of a motion for summary judgment is to determine whether there is any need for an evidentiary hearing beyond the scope of that contemplated by Civ.R. 56 has become ingrained in Ohio law. The motion enables a court to assess the proffered proof to see whether there is a genuine

need for trial and, thereby, to serve the interest of justice by avoiding needless trials where no triable issue exists."). (Citations omitted.) C.C.R. 4(D) states Civ.R. 56 motions "are hereby set for a non-oral hearing date on the 28th day following the filing of the motion [and] shall be deemed submitted * * * for non-oral hearing on that date."[1]

{¶ 18} Nonetheless, appellants contend the Court of Claims had to conduct an oral evidentiary hearing on immunity under C.C.R. 4.1, which provides:

> Any party may file a motion requesting that the Court of Claims make a determination, as required by R.C. 2743.02(F), as to whether the officer or employee is entitled to personal immunity under R.C. 9.86 and whether the courts of common pleas have jurisdiction over the civil action. If no motion for this determination is made, the Court of Claims may sua sponte set the matter down for the R.C. 2743.02(F) hearing.
>
> Pursuant to R.C. 2743.02(F), eff. November 3, 2005, the officer or employee may participate in the immunity determination hearing before the court of claims to determine whether the officer or employee is entitled to personal immunity under R.C. 9.86. Notice of the immunity determination hearing shall be provided to the officer or employee in the manner ordered by the court.[2]

{¶ 19} This rule discusses a "R.C. 2743.02(F) hearing" and an "immunity determination hearing," but does not require an oral evidentiary hearing. As appellees point out, we have previously found no error in a trial court's refusal to conduct an evidentiary hearing prior to making a R.C. 9.86 and 2743.02(F) immunity determination where no factual conflict warranted one. *Lippert v. Med. College of Ohio*, 10th Dist. No. 92AP-741 (Dec. 1, 1992). As we discuss below, the Court of Claims did not err when it found no genuine issue of material fact existed, and the eight employees were entitled to immunity as a matter of law. An evidentiary hearing was not warranted.

---

[1] The court may, in its discretion, allow oral argument on a motion for summary judgment. *Castrataro* at ¶ 16; *see* C.C.R. 4(C).

[2] R.C. 2743.02(F) states: "A civil action against an officer or employee, * * * that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶ 20} Appellants also take issue with statements of the magistrate and Court of Claims to the effect that, if the immunity issue was not resolved on summary judgment, it would be resolved at trial. Appellants contend an immunity hearing must occur before trial. Here, the immunity issue was properly resolved on summary judgment; therefore, it is unnecessary for us to address appellants' contention. It is moot. Thus, we overrule the second assignment of error.

### C. Summary Judgment

{¶ 21} In their third assigned error, appellants contend the Court of Claims erred when it granted appellees' summary judgment motion. Appellate review of summary judgment is de novo, which necessitates an independent review of the record without deference to the trial court's decision. *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, ¶ 24; *Miller v. J.B. Hunt Transport, Inc.*, 10th Dist. No. 13AP-162, 2013-Ohio-3892, ¶ 20. Under Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment "is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party." *Brown v. Ohio Dept. of Rehab & Corr.*, 10th Dist. No. 12AP-891, 2013-Ohio-4207, ¶ 20, citing *Stevens v. Ohio Dept. of Mental Health*, 10th Dist. No. 12AP-1015, 2013-Ohio-3014, ¶ 11, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 22} Under Civ.R. 56(C), "the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact." *Anderson v. Preferred Title & Guaranty Agency, Inc.*, 10th Dist. No. 13AP-385, 2014-Ohio-518, ¶ 14, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 293 (1996). "The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of a type

listed in Civ.R. 56(C), affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims." *Id.*, citing *Dresher* at 293, and *Vahila v. Hall,* 77 Ohio St.3d 421 (1997). "Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial." *Id.*, citing *Dresher* at 293; *Vahila* at 430.

### 1. Application of R.C. 119.06(C)

{¶ 23} Initially, we address the contention ODJFS employees lied about Wee Care's ability to operate with an expired license under R.C. 119.06(C). Wee Care did operate with an expired license for over one year.  Thus, in their effort to prove misconduct by appellees and its employees, appellants ask us to find Wee Care operated illegally.

{¶ 24} R.C. 119.06(C) provides in relevant part: "When periodic registration of licenses or renewal of licenses is required by law, a licensee who has filed an application for registration or renewal within the time and in the manner provided by statute or rule of the agency shall not be required to discontinue a licensed business or profession merely because of the failure of the agency to act on the licensee's application."

{¶ 25} R.C. 5104.03 formerly provided that once a day care center with a provisional license passed a required investigation and inspection, ODJFS' director had to issue the center a license effective for two years. Former R.C. 5104.03(C).  When Wee Care's two-year license was in effect, centers had to file for renewal at least 60 days before their license expired.  *See* Former R.C. 5104.03(A).  If the center passed another investigation and inspection, ODJFS' director had to renew its license for two more years. Former R.C. 5104.03(D).  A center had to go through the renewal process each time its license expired.  Former R.C. 5104.03 provided for periodic renewal of licenses.[3] Also, it is undisputed Wee Care timely filed its renewal application and ODJFS is an agency within the meaning of R.C. 119.06(C). *See* R.C. 119.01(A). Thus, Wee Care could legally operate with an expired license under R.C. 119.06(C) while it waited for ODJFS to act on the

---

[3] Effective September 29, 2011, Ohio eliminated the renewal process for child care center licenses. Once a center successfully moves past the provisional license phase, the center receives a license that does not expire but can be revoked. *See* 2011 Am.Sub.H.B. No. 153; R.C. 5104.03 and 5104.04.

renewal application. Whether third-parties would still contract with Wee Care is a separate matter.

{¶ 26} In their reply brief, appellants contend R.C. 119.06(C) conflicts with R.C. 5104.02(A) and former R.C. 5104.03(C). Appellants have not properly raised this argument on appeal, having asserted it for the first time in their reply brief. *Fisher v. State*, 10th Dist. No. 13AP-38, 2014-Ohio-2280, ¶ 33. Moreover, there is no conflict. R.C. 5104.02(A) states: "No person * * * shall operate, establish, manage, conduct, or maintain a child day-care center * * * without a license issued under section 5104.03 of the Revised Code." Former R.C. 5104.03(C) stated the requirement that ODJFS' director "issue a license to be effective for two years from the date of issuance of the provisional license" if certain requirements were met. Former R.C. 5104.03(C). R.C. 119.06(C) complimented these statutes and permitted day care centers like Wee Care to operate during any gaps between a license's expiration and renewal or revocation.

### 2. Civil Immunity for ODJFS Employees[4]

{¶ 27} Appellants contend the Court of Claims erred when it found eight ODJFS employees were entitled to civil immunity under R.C. 9.86, which provides in part:

> [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 28} In assessing immunity under R.C. 9.86, this court has observed:

> In the context of immunity, an employee's wrongful act, even if it is unnecessary, unjustified, excessive, or improper, does not automatically take such act manifestly outside the scope of employment. *Elliott v. Ohio Dept. of Rehab. & Corr.* (1994), 92 Ohio App.3d 772, 775 * * *, citing *Thomas v. Ohio Dept. of Rehab. & Corr.* (1988), 48 Ohio App.3d 86, 89 * * *; and *Peppers v. Ohio Dept. of Rehab. & Corr.* (1988), 50 Ohio App.3d 87, 90 * * *; *Brooks* [*v. The Ohio State Univ.*, 111 Ohio App.3d 342,] 350 * * *. It is only where the acts of state

---

[4] Appellees claim appellants have not assigned as error the Court of Claims' decision regarding immunity; however, this issue is encompassed by the assigned error on summary judgment.

employees are motivated by actual malice or other such reasons giving rise to punitive damages that their conduct may be outside the scope of their state employment. *James H. v. Dept. of Mental Health and Mental Retardation* (1980), 1 Ohio App.3d 60, 61 * * *. The act must be so divergent that it severs the employer-employee relationship. *Elliott*, at 775 * * *, citing *Thomas*, at 89 * * *, and *Peppers*, at 90 * * *.

Malicious purpose encompasses exercising "malice," which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified. *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448, 453-54 * * *, citing *Teramano v. Teramano* (1966), 6 Ohio St.2d 117, 118 * * *; and *Bush v. Kelley's Inc.* (1969), 18 Ohio St.2d 89 * * *.

"Bad faith" has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead or deceive another. *Lowry* [*v. Ohio State Hwy. Patrol*, 10th Dist. No. 96API07-835] (Feb. 27, 1997), quoting *Black's Law Dictionary* (5 Ed.1979) 127. Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. *Id.*

Finally, "reckless conduct" refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent. *Hackathorn v. Preisse* (1995), 104 Ohio App.3d 768, 771 * * *, citing *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104-05 * * *, citing 2 Restatement of the Law 2d, Torts (1965) 587, Section 500. The term "reckless" is often used interchangeably with the word "wanton" and has also been held to be a perverse disregard of a known risk. *Jackson*, citing *Thompson*, at 104 * * *, and *Poe v. Hamilton* (1990), 56 Ohio App.3d 137, 138 * * *. As to all of the above terms, their definitions connote a mental state of greater culpability than simple carelessness or negligence. *See Jackson, supra*, at 454 * * *.

*Wrinn v. Ohio State Hwy. Patrol*, 10th Dist. No. 11AP-1006, 2013-Ohio-1141, ¶ 12, quoting *Caruso v. State*, 136 Ohio App.3d 616, 620-22 (10th Dist.2000).

{¶ 29} We have also considered definitions of willful, wanton, and reckless conduct the Supreme Court of Ohio gave in a similar context. *Id.* at ¶ 13. In the case of political subdivision employee immunity, the Supreme Court held those terms described different and distinct degrees of care and were not interchangeable. *Id.*, citing *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph one of the syllabus. The Supreme Court defined those terms as follows:

> Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. (*Tighe v. Diamond*, 149 Ohio St. 520 (1948), approved and followed.)
>
> Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. (*Hawkins v. Ivy*, 50 Ohio St.2d 114 (1977), approved and followed.)
>
> Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. (2 Restatement of the Law 2d, Torts, Section 500 (1965), adopted.)

*Anderson* at paragraphs two, three, and four of the syllabus.

{¶ 30} Appellants claim two former ODJFS directors are not immune because they failed to establish procedures to prevent the Zero-out Procedure. Appellants claim the two former directors and six other ODJFS employees are not immune because they used the Zero-out Procedure against appellants.[5] Notably, appellants' argument largely fails to discuss the conduct of the employees individually and contains many general allegations about all of the employees, mostly without citation to the record. Regardless, appellants failed to prove the Zero-out Procedure exists and misinterpret several pieces of evidence.

---

[5] Appellants use the terms "Agents" and "Directors" throughout their briefs without defining them. It appears "Directors" refers to the two former ODJFS directors. However, it is unclear whether "Agents" refers to the other six ODJFS employees at issue in the immunity proceedings or encompasses those employees plus the two former directors. We will presume "Agents" applies to all eight employees.

{¶ 31} Appellants construe Harrison's above-quoted testimony as an admission about the Zero-out Procedure and complain the Court of Claims ignored this and other evidence. The court's failure to explicitly address evidence does not mean it was ignored. Also, Harrison never testified to the procedure appellants describe. He explained the goal of revocation is to have zero children in a center but recognized ODJFS could not unilaterally revoke a license because of due process issues. ODJFS could, if warranted by "the rules," reduce the center's capacity. Harrison never said ODJFS delayed revocation proceedings to put centers, like Wee Care, out of business without due process. Nor did he say ODJFS reduced Wee Care's capacity to harm it. In an affidavit, he averred no "Zero-out Procedure" existed, and he did not know what led to the capacity changes in this case. Uncontroverted evidence shows Wee Care requested most of the capacity changes, and there is no evidence the changes hurt business. To the contrary, it appears Wee Care sought the reductions in response to its loss of business after FCDJFS did not renew its contract with Wee Care.

{¶ 32} Appellants maintain the ODJFS employees knew FCDJFS would not do business with Wee Care if it had an expired license. However, Deborah Hatfield, supervisor of contract services at FCDJFS, averred FCDJFS contracted with day care centers operating on an expired license before. According to Hatfield, ODJFS made it clear Wee Care could operate even though its license expired. FCDJFS' decision to not renegotiate Wee Care's contract was based not just on the expired license but Wee Care's history of compliance issues and complaints. Appellants claim an e-mail from Daniel Lantz of ODJFS shows the employees and FCDJFS implemented the Zero-out Procedure together. The e-mail states nothing to that effect. Instead, the e-mail indicates FCDJFS desired more information from ODJFS about centers in license "limbo" to make decisions about whether to renew contracts with those centers. Lantz averred he never heard of the Zero-out Procedure.

{¶ 33} Appellants complain the employees know other third-parties would not transact with a day care center with an expired license. They claim Brown even told Harrison, Blevins, and Vent about the financial troubles having an expired license created, and they did not renew Wee Care's license or institute revocation proceedings more quickly. Even if ODJFS employees knew that appellants might or were in fact

suffering financial difficulties because of their the status, that does not prove the employees delayed proceedings to harm Wee Care. The evidence indicates the delay was due to the number of steps in the administrative process. Harrison averred the time it took to issue the PAO in this case was typical of the time it took ODJFS to issue a PAO to other centers "that did not comply with the applicable regulations."   (Harrison Affidavit, ¶ 13.)

{¶ 34} Without citation to the record, appellants claim the employees "feared that if they used the procedures contained in O.R.C. § 119 to revoke a day-care center's license and/or deny a Renewal Application, it would not accomplish their goal of destroying Plaintiffs' Center." (Appellants' Brief, 43.)   Appellants claim the employees delayed in issuing the PAO until pressured by counsel and withdrew the PAO because, according to Harrison, ODJFS could not prove its case. Harrison never testified to that effect, and evidence ODJFS intended to modify the PAO does not prove that. Additionally, ODJFS' delay in issuing a new PAO does not prove Wee Care was in compliance all along.

{¶ 35} Appellants contend, as part of the Zero-out Procedure, the employees put inaccurate information on ODJFS' website, i.e., the website indicated Wee Care's license expired and did not mention R.C. 119.06(C). Appellants also complain they never got a license indicating Wee Care had the right to operate under R.C. 119.06(C). However, appellants cite no legal authority indicating the employees had a duty to post information about R.C. 119.06(C) online or on a license. Appellants also point to no evidence the employees controlled the information on the website or had a sinister motive in not putting information about R.C. 119.06(C) online or on a physical license.

{¶ 36} In sum, there is no evidence the Zero-out Procedure appellants describe exists or was utilized against them. There is no evidence the ODJFS employees' actions were manifestly outside the scope of their employment or that they acted with malicious purpose, in bad faith, or in a wanton or reckless manner as those terms are defined above. The Court of Claims properly found the employees immune as a matter of law.

### 3. Breach of Contract and Express Warranty

{¶ 37} " ' "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a

manifestation of mutual assent and legality of object and of consideration." ' " *Coffman v. Ohio State Adult Parole Auth.*, 10th Dist. No. 12AP-267, 2013-Ohio-109, ¶ 9, quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). An offer is a " ' "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." ' " *Grothaus v. Warner*, 10th Dist. No. 08AP-115, 2008-Ohio-5563, ¶ 16, quoting *Leaseway Distrib. Ctrs., Inc. v. Dept. of Adm. Servs.*, 49 Ohio App.3d 99, 105 (10th Dist.1988), quoting Restatement of the Law 2d, Contracts, Section 24, at 71 (1981). Generally speaking, a warranty is an "express or implied promise that something in furtherance of [a] contract is guaranteed by one of the contracting parties." *Black's Law Dictionary* 1581 (7th Ed.1999).

{¶ 38} ODJFS sent a letter notifying Wee Care its license expired on December 29, 2005 and "[i]n order to assure timely licensure of your facility, license renewal application form (ODHS 1210) and fee payment must be received * * * no later than 10/31/05." (R. 48, Ex. B.) Appellants claim this letter constitutes an offer by ODJFS to timely process Wee Care's renewal application if appellants timely submitted the application and fee—which they did. Appellants also claim this letter constituted an express warranty, and appellees breached the contract and warranty.

{¶ 39} As the Court of Claims indicated, the letter does not contain an offer; it manifests no willingness to bargain, but, rather, is informational in nature and sets forth statutory requirements to renew a day care license. Additionally, even if the concept of an express warranty could apply in this context, the letter made no promises regarding renewal. Thus, the Court of Claims properly granted appellees summary judgment on the breach of contract and express warranty claims.

### 4. Fraud and Fraudulent Misrepresentation

{¶ 40} Appellants contend the Court of Claims erred when it granted appellees summary judgment on the fraud and fraudulent misrepresentation claims. To establish a fraud claim, a plaintiff must prove the following elements: "(1) a representation or, where there is a duty to disclose, concealment of a fact, (2) the representation was material to the

transaction, (3) the representation was made falsely, with knowledge of its falsity, or with such disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) the representation was made with the intent of misleading another into relying on it, (5) justifiable reliance on the representation or concealment, and (6) an injury proximately caused by the reliance." *Wiles v. Miller*, 10th Dist. No. 12AP-989, 2013-Ohio-3625, ¶ 33, citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998). The elements for fraudulent misrepresentation claims are the same as those for a fraud claim. *See Natl./RS, Inc. v. Huff*, 10th Dist. No. 10AP-306, 2010-Ohio-6530, ¶ 22.

{¶ 41} Appellants contend ODJFS employees represented to them that Wee Care could operate with an expired license, and this representation was false because the employees knew third-parties would want to see a current license to do business with Wee Care. The employees lied in order to implement the Zero-out Procedure, and by the time appellants realized no one would contract with them, Wee Care lost most of its business because FCDJFS did not renew its contract with the center.

{¶ 42} However, Wee Care could operate under R.C. 119.06(C). A representation to this effect was not false simply because third-parties chose not to transact with Wee Care. To the extent appellants suggest ODJFS falsely represented all third-parties would still do business with Wee Care, we fail to see how appellants could justifiably rely on such a representation. ODJFS could not know the mindset of every third-party with whom appellants hoped to transact. Moreover, appellants fail to explain how they relied on such a representation to their detriment. There is no contention the government took adverse action against appellants for operating "illegally." At the trial level, appellants claimed they relied on representations by not pursuing relief in mandamus or otherwise seeking to expedite the licensure proceedings. Even if appellants made this argument on appeal, they have not shown the actions they refrained from taking could have succeeded.

{¶ 43} Appellants also contend Harrison lied to former congresswoman Debra Pryce's office during a "federal investigation" into Wee Care's licensure issues. (Appellants' Reply Brief, 26.) Specifically, he told Pryce's office Wee Care's license remained operational and failed to mention the Zero-out Procedure. It is unclear why appellants believe they have standing to raise these issues. Also, Wee Care could legally operate, and Harrison could not disclose a non-existent procedure. Thus, the Court of

Claims properly granted appellees' summary judgment on the fraud and fraudulent misrepresentation claims.

### 5.   Tortious Interference with Contract and Business Relationships

{¶ 44} "In order to recover a claim for tortious interference with a contractual relationship, one must prove: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting damages." *Bansal v. Mt. Carmel Health Sys.*, 10th Dist. No. 10AP-1207, 2011-Ohio-3827, ¶ 29, citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415 (1995). " 'The tort of interference with a business relationship occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another.' " *Miller* at ¶ 21, quoting *Geo-Pro Servs., Inc. v. Solar Testing Laboratories, Inc.*, 145 Ohio App.3d 514, 525 (10th Dist.2001).

{¶ 45} Appellants contend ODJFS' employees knew third-parties, like parents and FCDJFS required that a day care center have an unexpired license before the third-parties would do business with the day care. Armed with this knowledge, the employees "set out to destroy" appellants' contracts and business relationships through the Zero-out Procedure and succeeded. (Appellants' Brief, 30-31.) Appellants claim they had "a contractual relationship with each parent or guardian who had their children enrolled at [Wee Care]." (Appellants' Brief, 31.) ODJFS and FCDJFS conspired to procure the breach of these contracts by stopping public funding for Wee Care's services, leading to a "mass exodus" of children at Wee Care. (Appellants' Brief, 31.)

{¶ 46} Appellants failed to show appellees intentionally procured the breach of any contract or induced or otherwise purposely caused a third-person not to enter into or continue with a relationship with them. Third-parties may have chosen to not do business with Wee Care because it had an unexpired license, but there is no evidence that was appellees' goal. Appellants have not proven a Zero-out Procedure exists. The evidence shows Wee Care's licensure issues occurred because ODJFS believed compliance problems prohibited renewal and the number of steps in the administrative process—not

because appellees wanted to financially ruin appellants. The Court of Claims properly granted appellees' summary judgment on the tortious interference claims.

### 6. Negligence and NIED

{¶ 47} "To establish actionable negligence, a plaintiff must show the existence of a duty, the breach of that duty, and injury resulting proximately therefrom." *Rowe v. Pseekos*, 10th Dist. No. 13AP-889, 2014-Ohio-2024, ¶ 6, citing *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, ¶ 16. The Court of Claims found appellants could not recover for negligence because they only demonstrated economic loss. *See Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.,* 106 Ohio St.3d 412, 2005-Ohio-5409, ¶ 6 ("The economic-loss rule generally prevents recovery in tort of damages for purely economic loss."). Also, they failed to prove appellees had a duty to act more quickly than they did on the renewal application, and, even if appellees had and breached such a duty, appellants identified no legal authority that permitted them to bring a lawsuit for the breach. The Court of Claims also found appellants could not recover for NIED because they did not allege or prove they were in physical peril.

{¶ 48} On appeal, appellants contend without citation to legal authority that ODJFS "[c]learly" had and breached a duty to "act in good faith and process [appellants'] renewal application in a timely manner." (Appellants' Brief, 36.) This unsupported contention does not address the Court of Claims' reasoning and is insufficient to meet appellants' burden to affirmatively demonstrate error on appeal. *See State v. Hubbard,* 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34. Thus, we find no error in the grant of summary judgment to appellees on the negligence and NIED claims.

### 7. Civil Conspiracy

{¶ 49} Civil conspiracy consists of " ' "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." ' " *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 40 (10th Dist.), quoting *Kenty* at 419, quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126 (1987). A civil conspiracy claim is derivative as it cannot be maintained absent an underlying tort that is actionable without the conspiracy. *Id.* The Court of Claims granted appellees summary judgment on the conspiracy claim in part because appellants presented no evidence of an actionable

underlying tort.  We agree with this conclusion, having already found no error in the grant of summary judgment to appellees on the other tort claims. Thus, we overrule the third assignment of error.

### 8. Due Process

{¶ 50} As a final matter, we note, as the Court of Claims did, that, to the extent appellants argue their constitutional due process rights were violated, it is well-settled that the Court of Claims lacks subject-matter jurisdiction over such claims.  *Bell v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 10AP-920, 2011-Ohio-6559, ¶ 22.

## IV. CONCLUSION

{¶ 51} Having overruled appellants' three assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.

————————————